UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernest Gail LAIL, Defendant–Appellant.

No. 87–3070.

United States Court of Appeals,
Eleventh Circuit.

June 10, 1988.

H. Jay Stevens, Federal Public Defender, Orlando, Fla., for defendant-appellant.

Robert Merkle, Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and BROWN*, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The only issue on this appeal is whether the trial court properly admitted evidence of an extrinsic crime under Fed.R.Evid. 404(b).[1] Because we find that the extrinsic crime evidence was not properly admitted, we reverse the judgment of the district court and remand for a new trial.

Appellant Lail was charged with two bank robberies. The first occurred at the Liberty National Bank in Altamonte Springs, Florida on November 18, 1985. The second occurred at the First Federal Savings and Loan of Winter Haven in Orlando, Florida on November 27, 1985.

In each of these robberies, a lone white male dressed in a tee-shirt and jeans entered the bank with a briefcase and approached a teller. He took a handgun out of the briefcase and demanded money. The teller gave him the money which he placed in the briefcase. The robber then fled on foot. In each case, the robber used little or no disguise, and he was in the bank for only one to two minutes.

In its case-in-chief, the government presented the testimony of eyewitnesses to each robbery who had identified Lail from photographic lineups. These eyewitnesses were also able to identify Lail in court. The government then offered the testimony of an eyewitness to a third, uncharged bank robbery which occurred at the Amerifirst Bank in Delray Beach, Florida on December 20, 1985. This witness would have identified Lail as the robber in the Amerifirst robbery, but the trial court refused to admit the testimony at that point.

Lail then presented three witnesses in his own behalf. These witnesses placed Lail at his home in Fort Lauderdale, Florida at the relevant times. In light of the alibi evidence, the trial court reexamined its previous ruling, reversed itself, and allowed the government to present the evidence of the Amerifirst robbery on rebuttal.

In the Amerifirst robbery, the robber entered the bank in the early afternoon posing as a businessman. He spoke with the manager about opening an account for fifteen or twenty minutes. He returned late in the afternoon and entered the manager's office. He opened a briefcase revealing several sticks of dynamite and a device which appeared to be a detonator. He also took a handgun from his waist. After forcing the manager to give him money, the robber made the manager leave the building with him. Once they were outside, the robber released the manager. The second encounter lasted ten to fifteen minutes. We must now determine whether evidence of this robbery was properly admitted in Lail's trial for the other robberies.

The leading case in this circuit on Rule 404(b) evidence is *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).[2] In *Beechum*, the court set forth a two-part test for evaluating the admissibility of 404(b) evidence. First, the evidence must be relevant to an issue other than the defendant's character. *Id.* at 911. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Fed.R.Evid.] 403. [footnote omitted]." *Id.*[3]

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Fed.R.Evid. 404(b) provides:
   (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

3. *Beechum* also requires that there be sufficient evidence to show that the defendant committed the extrinsic crime. 582 F.2d at 912–13. This requirement is sometimes set out as a third

*Beechum* specifically noted that the test for evaluating 404(b) evidence would vary depending on the issue for which it was offered. *Id.* at 911–12 n. 15. In this case, the government offered the 404(b) evidence to establish identity.[4] The standard for evaluating 404(b) evidence offered to establish identity is particularly stringent. *See United States v. Myers,* 550 F.2d 1036, 1044–48 (5th Cir.1977); *United States v. Goodwin,* 492 F.2d 1141, 1153–55 (5th Cir.1974).[5] The *Beechum* court noted:

> the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. [citation omitted].

582 F.2d at 912 n. 15.

The government argues that the 404(b) robbery had four traits in common with the charged robberies: (1) a lone gunman, (2) use of a handgun, (3) lack of disguise, and (4) proximity in time of occurrence. Although it is true that the robberies do have these traits in common, it is also true that at least the first three traits are common to many bank robberies. Certainly, none of them could be called a "signature" trait. As to the proximity in time, we have no information concerning the rate at which bank robberies occur in the relevant portions of Florida. However, we are satisfied that this trait alone does not have great significance.

[4, 5] The major dissimilarities between the 404(b) robbery and the charged robberies are more striking. In the 404(b) robbery, the robber used dynamite as his main weapon. In the charged crimes, the robber used a handgun as the main weapon. In the 404(b) robbery, the robber posed as a businessman and made two trips to the bank. In the charged crimes, the robber did not pose as a businessman, dressed in a tee-shirt and jeans, made no pretense as to his motive, and made only one trip to the bank. In the 404(b) robbery, the robber forced the bank manager to leave the bank with him. In the charged crimes, the robber took no hostages. Finally, the 404(b) crime occurred in Delray Beach, over 150 miles from the Orlando area where both of the charged robberies occurred. Because of these substantial differences between the crimes, the 404(b) evidence should have been excluded.[6] We find that this error constituted an abuse of discretion.[7]

We must still consider whether the admission of the 404(b) evidence was

---

prong of the *Beechum* test. *See, e.g., United States v. Simon,* 839 F.2d 1461, 1471 (11th Cir. 1988). The evidence of the extrinsic crime was sufficient in this case.

4. The government does not argue that the 404(b) evidence was offered for any other purpose, and we assume that it was not.

5. *Beechum* completely revamped the law in this circuit concerning Rule 404(b) evidence, and both *Myers* and *Goodwin* were decided prior to *Beechum.* However, the *Beechum* court cited these cases approvingly with regard to the strict standard for evaluating 404(b) evidence offered to establish identity. 582 F.2d at 912 n. 15.

6. *Compare Myers,* 550 F.2d at 1044–48 *with United States v. Solomon,* 490 F.Supp. 373 (S.D. Ga.1980). Both *Myers* and *Solomon* were bank robbery cases in which the government sought to establish identity in the charged robbery by introducing evidence that the defendant had committed other uncharged robberies. In both cases, the courts rejected a number of claimed similarities which would be common to many bank robberies as we do here.

In *Myers,* the court found the uncharged robbery should have been excluded because of one major dissimilarity—that the charged crime was committed by one gunman whereas the uncharged crime was committed by two gunmen. In *Solomon,* the court found the uncharged robbery to be admissible because of three peculiar similarities between the charged and uncharged crimes—that the robber used a recognizable silver pistol, that he tampered with the bank's phone, and that he told the victim not to take any action for several minutes after he left.

Like the *Myers* and *Solomon* courts, we have focused on the striking elements of this case—that the robbers used different weapons, that they used different pretenses, that they made a different number of trips to the bank, that they differed as to hostage-taking, and that the robberies occurred in different areas.

7. Abuse of discretion is the proper standard for reviewing the admission of 404(b) evidence. *United States v. Edwards,* 696 F.2d 1277, 1280 (11th Cir.), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).

harmless error. The case presented the jury with a clear credibility choice between the identifications made by the government's eyewitnesses and the alibi testimony of Lail's witnesses. The additional identification of the 404(b) witness had a strong tendency to bolster the credibility of the government's eyewitnesses because he had a significantly longer time to observe the robber than did the witnesses in the charged crimes. Thus, the erroneous admission of that evidence was not harmless.[8]

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED for a new trial.

REVERSED AND REMANDED.

---

**8.** At trial, the government introduced videotapes and photographs of the robberies taken by bank surveillance cameras. These videotapes and photographs were not made a part of the record on appeal, and thus they cannot be considered in our harmless error analysis. We do note, however, that the government represented at oral argument that these videotapes and photographs did not provide a clear image of the robber's face.