961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit
UNITED STATES of America, Plaintiff-Appellee,
v.
James E. TYLER; Michael L. YEPEZ, Defendants-Appellants.
 Nos. 90-2258, 90-2259.
 United States Court of Appeals, Sixth Circuit.
 May 12, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants, James Tyler and Michael Yepez, appeal their bank robbery and conspiracy convictions. Upon consideration of the record and the issues presented, we shall AFFIRM the conviction for Yepez but REVERSE the conviction of Tyler, for the reasons stated.
 
 
 2
 The evidence presented by the prosecution reasonably indicated the following scenario in this case which involved the robbery of federally insured Old Kent Bank in Grand Rapids, Michigan, on December 1, 1988. A car was stolen shortly before the robbery and was used by two men in the course of the bank robbery, and in the ensuing flight from the scene. The two men, using ski masks, gloves, and pillow cases, ran quickly into the bank, jumped over the counter from each end and proceeded into the teller area with pillow cases, scooping up money totalling almost $44,000.00. One of the men whose face was covered was, nevertheless, thought to be Mexican or Hispanic. The robbers accomplished their task quickly and efficiently, leaving behind a group of frightened tellers.
 
 
 3
 An investigation of the robbery uncovered the stolen car used by the robbers in a mall parking lot not far from defendant Yepez's apartment. A witness, Loretta Eldridge, indicated that Yepez had attempted to recruit her as a driver for the planned bank robbery the night before it occurred. Defendant Tyler also discussed it with her. Also Wallace McCree testified that Tyler had told him he planned to rob a bank, and that after the robbery, Tyler had given McCree a large quantity of cash for a cocaine purchase which he said came from a robbery.
 
 
 4
 The investigation centered on Yepez. A state judge issued a search warrant on December 3, 1988, for the Yepez apartment. The search produced a pillow case containing a $20 bill and another bill thought to be involved in the bank robbery. Yepez was, at that time, on parole from a prior bank robbery conviction in Grand Rapids, as was Tyler. A witness identified Yepez as the person stealing the vehicle which was later used in the robbery. We find no error in the in-court identification of Yepez as the car thief. Another witness testified about admissions made by Yepez concerning the bank robbery.
 
 
 5
 The only issue raised by each of the defendants was the admission into evidence, over their objection, of a police detective's testimony about prior bank robberies. The government called Theodore Quist, a sergeant with the Grand Rapids City Police Department and formerly a Grand Rapids Police detective, to read into evidence several police reports concerning prior bank robberies committed by both defendants. Sergeant Quist also read a letter which Tyler had signed relating to a prior bank robbery. Further, Quist testified about police documents which set forth the manner in which a previous bank robbery involving Tyler, dated April 28, 1980, occurred. He then read to the jury a statement signed by Tyler, dated September 11, 1981, relating to the 1980 bank robbery.
 
 
 6
 Within the police report read by Sergeant Quist was an August 1, 1990 statement by Yepez in which he admitted his involvement in a 1980 bank robbery indicating:
 
 
 7
 [T]hat he participated in the bank robbery with Johnny D. McLiechey, Tammy K. McLiechey, and David Harrison. They had met at Battle Creek, Michigan, and discussed obtaining money by an armed robbery. They drove to Grand Rapids, Michigan, and selected the bank in question. The Ford Thunderbird was borrowed by David Harrison from a friend, Betty Ross, who was unaware of its intended use. The Ford Pinto was stolen by the defendant at Grand Rapids. He received a handgun from David Harrison prior to the bank robbery. The bank was robbed by the defendant and Johnny D. McLiechey with David Harrison driving the Ford Pinto.
 
 
 8
 Tyler's earlier statements also alluded to contacts with McLiechey.
 
 
 9
 This challenged evidence was admitted by the district court judge pursuant to Fed.R.Evid. 404(b):
 
 
 10
 (b) Other crimes, wrongs, or acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 11
 The district court found similarities between the bank robbery in question and the robbery or robberies committed some ten years before in the same citing, stating:
 
 
 12
 The similarities are not 100 percent by any means, but there are several distinctive ones.
 
 
 13
 The most distinctive one, the most distinctive two are the jumping over the cashiers, or the tellers areas, and working from opposite extremes toward the middle.... The second signature is the use of a stolen car. The other signature is the use of gloves. The other signature is the "let's go." Although it may be unimportant, another signature appears to be the use of Ford automobiles.
 
 
 14
 In any event, I see sufficient similarity to make this, as I said in my oral opinion, a rule of inclusion, not a rule of exclusion; of course, it is a rule of inclusion only of the issue of intent, plan, absence of mistake and so forth as the rule itself states. The jury will have to be so informed.
 
 
 15
 The district court also found that the probative value of the prior bad act evidence was not outweighed by unfair prejudice under Rule 403. While we have held that the trial judge has "very broad" discretion to decide Rule 404(b) and Rule 403 cases, United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982), the evidence in this case relates to a robbery that had occurred more than ten years prior to the robbery at issue, a recent occurrence compared to the almost contemporary action admitted in Vincent. "The rule is that the prior conduct must be reasonably near in time." United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985). The evidence of prior criminal activity must pertain to "similar and related offenses." United States v. Ring, 513 F.2d 1001, 1007 (6th Cir.1975) (quoting United States v. Nemeth, 430 F.2d 704, 705 (1970)). See also United States v. Czarnecki, 552 F.2d 698, 702 (6th Cir.1977).
 
 
 16
 The question of admissibility of evidence of the prior bank robbery is, in our view, a close one. A similar issue was considered by another court which reached an opposite conclusion, reversing the district court's Rule 404(b) ruling allowing evidence of another uncharged bank robbery. These four similarities were noted: "(1) a lone gunman, (2) use of a handgun, (3) lack of disguise, and (4) proximity in time of occurrence." United States v. Lail, 846 F.2d 1299, 1301 (11th Cir.1988). In Lail, there was also similarity of dress (tee-shirt and jeans), and the robber carried a brief case for the money. Id. at 1300. Despite proximity in time and the other similarities, the court held the evidence should have been excluded because of several "major dissimilarities." Id. at 1301. We share the Lail court's concern about making too much of traits "common to many bank robberies" and calling them "signature" characteristics. Id. at 1301.
 
 
 17
 We have stated as much in United States v. Phillips, 599 F.2d 134, 136 (6th Cir.1979):
 
 
 18
 Something more than repeated performance of the same class of crimes is required in evidencing a "design" or "plan" which, if proved, may raise the inference that the accused was the perpetrator of the crime in question. Professor McCormick observes there must either be an agreement to commit a series of crimes, a "plan," or there must be a distinctive pattern--" [t]he device used must be so unusual and distinctive as to be like a signature."
 
 
 19
 (quoting McCormick, Evidence § 157, at 328 (1954)) (footnote omitted). In Lail, there were significant differences in the carrying out of the robberies, and in Phillips there was no real evidence of "common plan or distinctive pattern, no 'signature.' " Id. at 137.
 
 
 20
 There are some similarities in this case to the previous 1980 robbery. We believe the admission of this remote evidence, having some similarities but also some differences, was an abuse of discretion.[1] Also, "the central question under Rule 404(b) is whether ... the probative value of the evidence outweighed its potential prejudicial effect." Czarnecki, 552 F.2d at 702. We believe that the potential prejudicial effect upon Tyler in admitting the evidence was sufficient that we cannot consider the error to have been harmless.
 
 
 21
 As to Yepez, however, we consider the same error to have been harmless. Unlike Tyler, there was sufficient other evidence of Yepez's involvement that we are satisfied by the requisite burden that regardless of this controverted proof, the jury could and would have found him guilty beyond a reasonable doubt. Witness Eldridge also testified that Yepez discussed with her planning to rob a bank while they were "doing" cocaine. She testified that Yepez showed her his duffle bag, clothes, and pistol that he planned to use in connection with a robbery; and that he was going to use a ski mask and a sweatsuit and a pistol. Yepez invited Eldridge to drive the car that was to be used to rob the bank the next day and offered her $2,500 to do this. The witness also said, "he would jump over the sides of the counter and get into the cash drawers of the--you know--more than one teller."
 
 
 22
 Accordingly, we AFFIRM the judgment of conviction of Yepez in this case. We REVERSE the conviction of defendant Tyler.
 
 
 
 [1]
 The cautionary instruction given by the district judge also did not, in our view, sufficiently limit the purpose that the jury might consider such prior bad conduct evidence