**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Joseph HUDACEK,**
**Defendant–Appellant.**

No. 92–6806.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1994.

Gregory W. Gill, Montgomery, AL, for appellant.

Charysse L. Alexander, Redding Pitt, U.S. Attys., Montgomery, AL, for appellee.

## ON PETITION FOR REHEARING

Before KRAVITCH and BLACK, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The government's petition for rehearing is granted. We have modified certain language from our previous opinion in this case, *United States v. Hudacek*, 7 F.3d 203 (11th Cir. 1993). The earlier opinion is vacated and

withdrawn, and the revised opinion below is substituted therefor.

### REVISED OPINION

■ Michael Hudacek was convicted of conspiracy to manufacture and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count I), and possession of a listed chemical with the intent to manufacture a controlled substance in violation of 21 U.S.C. § 841(d)(1) (Count II). He was sentenced to life imprisonment without parole on the first count and ten years imprisonment and an assessment fee on the second count. In this appeal, Hudacek challenges his convictions and sentences. We affirm both the convictions and the life sentence. We vacate the sentence imposed with respect to the second conviction, and remand for resentencing.[1]

### I. Facts

On or about August 4, 1991, Hudacek met Murray Francher, of Auburn, Alabama, at a bar in Atlanta. The two struck up a conversation and Francher gave Hudacek his phone number. On August 31, 1991, Francher was arrested in Auburn on a drug charge. In exchange for a reduced sentence, he agreed to become a government informant.

On September 4, 1991, Hudacek telephoned Francher and told him that he would be coming to Auburn with another individual. Hudacek arrived in Auburn the following day with David Barrett. A series of telephone conversations and in-person meetings followed. The conversations revolved around a proposal by Hudacek and Barrett to establish a methamphetamine laboratory in the Auburn area. The two men had brought to Auburn a book detailing the chemical processes by which methamphetamine could be produced. Many of the conversations concerning the establishment of the laboratory were recorded by the government. With the assistance of Francher, undercover government agents were introduced to Hudacek and Barrett as potential contacts in the drug enterprise.

An undercover government agent rented a house as the site for the methamphetamine laboratory at the request of Hudacek and Barrett. Also at the request of Hudacek and Barrett, an undercover agent delivered laboratory supplies and chemicals, including a large quantity of phenylacetic acid, to the house. Shortly after the delivery, the two were arrested. Barrett pled guilty. Hudacek proceeded to trial.

### II. Entrapment and Sufficiency of the Evidence

Although the district court instructed the jury regarding entrapment, Hudacek argues that the district court judge should have held that he was entrapped as a matter of law. Alternatively, he contends that there was insufficient evidence for the jury to convict him on either count. We disagree with both arguments.

■ Hudacek was not entrapped as a matter of law merely because the government provided facilities and equipment assisting in the illegal enterprise as part of an undercover operation. Nor was the evidence such that the jury was required to hold that Hudacek was entrapped. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprise." *Jacobson v.*

---

1. As a general rule, the concurrent sentence doctrine establishes that the existence of one valid conviction may make unnecessary the review of other convictions when concurrent sentences have been given, provided there are no adverse collateral consequences to a defendant as a result of the concurrent sentence. *United States v. Caldwell*, 776 F.2d 989, 1006, n. 21 (11th Cir. 1985). However, in *Ray v. United States*, 481 U.S. 736, 737, 107 S.Ct. 2093, 2093–94, 95 L.Ed.2d 693 (1987), the Supreme Court declined to apply the concurrent sentence doctrine where the defendant received a monetary assessment in addition to concurrent terms of incarceration. *See also United States v. Young*, 975 F.2d 1537 (11th Cir.1992). In the instant action, appellant received a special monetary assessment at sentencing. The concurrent sentencing doctrine is thus inapplicable, and despite our affirmance of Hudacek's life sentence, failure to review the ten-year sentence might result in adverse consequences to Hudacek. In accordance with both *Ray* and *Young, supra,* we therefore address Hudacek's challenges to each sentence in turn.

*United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992), quoting *Sorrells v. United States,* 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). "In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." *Id.*

■ The evidence does not indicate that Hudacek had an innocent mind before his contact with the government's agents. He and his accomplice went to Auburn with the intent of establishing a methamphetamine laboratory, and they were already equipped with a book detailing the chemical process required to produce the controlled substance. The actions taken by the government agents to facilitate the establishment of the illegal enterprise were at the instruction of Hudacek and Barrett. We conclude that the evidence supports the determination of the jury that Hudacek was not entrapped by the government.

Similarly, after a review of the record, including numerous transcripts of recorded conversations between Hudacek and others concerning the establishment of the methamphetamine laboratory, we are convinced that there is sufficient evidence to uphold both of Hudacek's convictions.

III.   Sentencing

Appellant argues that it was error for the district court to sentence him to life imprisonment on count one.

■ Hudacek was sentenced pursuant to 21 U.S.C. § 841(b)(1)(A). Under the statute, a person convicted of an offense involving 100 grams or more of methamphetamine shall, "after two or more prior convictions for a felony drug offense have become final, ... be sentenced to a mandatory term of life imprisonment without release...." Hudacek contends that because one of the felony drug convictions counted against him was more than 15 years old, it should not have been used to enhance his sentence.

Unlike the sentencing guidelines, *see* U.S.S.G. § 4A1.2(e), the statute in question

does not impose any time limitation on the felonies triggering the enhanced sentencing provision. Thus, Hudacek's 20–year old conviction for importing cocaine was properly considered. Similarly, Hudacek's argument that the statute applies only to "kingpins" fails. The statute is explicit in imposing its penalty on all offenders with two or more prior felony drug convictions. *See United States v. Martinez–Zayas,* 857 F.2d 122, 127–31 (3rd Cir.1988) (reviewing legislative history of § 841(b).)

■ Appellant argues that had he been sentenced under the career offender provision of the sentencing guidelines, rather than the statute, he would have received a lesser sentence. However, for the purpose of reviewing the life sentence, we need not consider appellant's correct offense level under the sentencing guidelines. The guidelines specifically provide that: "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b). *See United States v. Willis,* 956 F.2d 248 (11th Cir.1992). The life sentence was, therefore, correct under both the statute and the guidelines.

Hudacek also challenges the ten-year sentence imposed with respect to the second count of the conviction on grounds that both his criminal history category and offense level were improperly calculated under the Sentencing Guidelines.

■ The court assessed Hudacek's criminal history at VI and classified him as a career offender. U.S.S.G. § 4B1.1 provides, in pertinent part, that a defendant is a career offender if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Hudacek concedes that he has one prior controlled substance conviction that could appropriately be counted as one of the two prior convictions qualifying him for career offender status, but maintains that the court erred in concluding that his second prior conviction, possession of a firearm by a felon, could be used in order to deem him a career offender. Specifically, Hudacek suggests that this sec-

ond conviction is not a crime of violence and thus fails to satisfy either of the prerequisite prior offenses under the career offender provision of the guidelines. The Application Notes to U.S.S.G. § 4B1.2 expressly state that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." This commentary is binding on the sentencing court. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.") The district court thus erroneously included Hudacek's felony conviction for possession of a firearm by a felon in reaching its determination that he could be classified as a career offender under § 4B1.1.

 Hudacek also contends that the court erred in evaluating his total offense level at 38 based in part on the testimony of a DEA chemist speculating on the amount of methamphetamine that could have been produced by the phenylacetic acid possessed by appellant. Appellant's offense level was assessed pursuant to U.S.S.G. § 2D1.1, which provides for an offense level of 36 if a defendant is in possession of "at least 1 KG but less than 3 KG of methamphetamine (actual)".[2] Pointing to the distinction set forth in the guidelines between "methamphetamine" and "methamphetamine (actual)," Hudacek argues that neither the government's witness nor the presentence report offers any indication as to the purity of the methamphetamine that he potentially could produce. The government responds that there was ample evidence suggesting that Hudacek intended to produce large quantities of methamphetamine from phenylacetic acid, and that the precise amount or purity level of the substance that was to be manufactured is therefore irrelevant. Significantly, at the sentencing hearing the court neither set forth the evidence or testimony upon which it relied in reaching its determination with respect to

Hudacek's offense level, nor did it specify the quantity of controlled substance which it ultimately used in this calculation. The absence of any explicit findings of fact regarding the manner in which the offense level was calculated renders virtually impossible any reasoned review of the sentence imposed. The record does not adequately reveal either the factors considered by the sentencing court in arriving at its assessment or the evidentiary basis supporting its final computation. *See United States v. Wise*, 881 F.2d 970 (11th Cir.1989); *United States v. Villarino*, 930 F.2d 1527 (11th Cir.1991). We therefore VACATE the ten-year sentence imposed in this case, and REMAND for resentencing so that the court may both recalculate appellant's criminal history category in light of *Stinson v. United States*, —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), and explicitly set forth its factual findings with respect to the quantity of methamphetamine relevant to the assessment of appellant's offense level.

AFFIRMED in Part, VACATED in Part and REMANDED in Part.

---

**2.** Two points were added to this figure for obstruction of justice, raising Hudacek's offense level to 38.