**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory Louis JONES, Defendant–
Appellant.**

**No. 93–8467.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1994.

L. Burton Finlayson, Federal Defender Program, Inc., Atlanta, GA, for appellant.

Michael J. O'Leary, Asst. U.S. Atty., Amy Levin Weil, Atlanta, GA, for appellee.

Before BIRCH and CARNES, Circuit Judges, and BLACKBURN *, District Judge.

CARNES, Circuit Judge:

Gregory Louis Jones appeals his convictions and sentences on one count of distributing crack cocaine in violation of 21 U.S.C. § 841; one count of possessing cocaine base with intent to distribute in violation of 21 U.S.C. § 841; one count of possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d); and one count of using or carrying that shotgun during and in relation to the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). For the reasons discussed below, we affirm his convictions, vacate his sentence for possessing a shotgun, and affirm his other sentences.

## I. BACKGROUND

On February 19, 1991, two detectives from the Atlanta police department observed Willie Ward on a streetcorner engaging in what they believed was drug dealing. Ward would take money from passersby in exchange for small packages from a brown paper bag which he kept in the wheel well of a pickup truck. He would then cross the street and pass something to the defendant, Gregory Louis Jones, who was standing in front of what appeared to be a video store. The detectives sent a confidential informant to buy drugs from Ward with $20 in city funds; the informant returned with what appeared to be cocaine and marijuana, and the officers observed Ward hand the money to Jones.

The detectives left the scene to confer with backup units, and returned a few minutes later and arrested Ward and Jones. Retrieving the paper bag from the wheel well of the pickup, they found that it contained crack cocaine and marijuana. They also seized from the seat of the truck two strips of paper with lottery numbers of the kind used in illegal commercial gambling operations. Jones then gave the officers permission to search the store, where they found $140 in cash, including the bill that the informant had used to make his purchase. Subsequently, the police discovered that Jones was leasing the store, and that he owned the pickup truck in which the drugs had been stashed.

Five months later, on July 19, 1991, the Atlanta police department executed a search warrant at 138 Griffin Street, Apartment 11, in Atlanta ("the apartment"), to investigate reports of drug dealing at that address. No one was home. The officers found crack cocaine in the kitchen, along with a triple-beam scale and a digital scale. They also found, throughout the apartment, small bags

* Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of Alabama, sitting by designation.

of the kind used to package crack cocaine. In the bedroom, they found a large, undivided piece, or "cookie," of crack cocaine on the bed. In a closet, which an officer described as "4 to 7 feet away from the bed," they found a loaded, sawed-off shotgun propped up against the wall. In a briefcase next to the bed, they found $9,200 in cash; there was a total of more than $12,000 in cash in the apartment.

The officers found a copy of Jones's birth certificate in the apartment, as well as power and telephone bills in Jones's name, bearing the apartment's address. They also found pictures of Jones wearing clothes and jewelry that were in the apartment, and they found a necklace with Jones's initials hanging from a chain. On the walls were plaques bearing his name. The police seized from the apartment several pieces of paper with lottery numbers and lists of bets written on them. Later investigation revealed that Jones's driver's license and truck registration listed the apartment as his address. When Jones was arrested eleven days later, he gave the apartment's address to the booking clerk as his home address.

A five-count superseding indictment, filed in June, 1992, charged Jones with: distributing crack cocaine on February 19, 1991; possessing crack cocaine with intent to distribute on July 19, 1991; using and carrying a sawed-off shotgun during and in relation to the July 19, 1991 drug trafficking offense; possession of an unregistered sawed-off shotgun; and possession of a firearm by a convicted felon. The district court granted Jones's motion to sever the count of possession of a firearm by a convicted felon, and that count is not before us in this appeal. Jones was then tried and convicted on the remaining counts. He was sentenced to three concurrent 168–month sentences on the drug and weapons possession counts, and to a consecutive 120–month sentence on the count of using and carrying the shotgun during a drug trafficking offense.

## II. DISCUSSION

Jones challenges the sufficiency of the evidence that he used or carried a firearm in connection with a drug trafficking offense;

he also challenges the district court's admission of evidence of his involvement with commercial gambling. Because Jones's sufficiency of the evidence argument, if correct, would require that Jones's conviction on that count be reversed and a judgment of acquittal be entered, we consider it first. We then review the admission of the gambling evidence. Finally, we discuss Jones's sentence on the charge of possessing an unregistered sawed-off shotgun.

### A. SUFFICIENCY OF THE EVIDENCE FOR JONES'S CONVICTION OF US-ING OR CARRYING THE FIREARM DURING OR IN RELATION TO DRUG TRAFFICKING

■ Jones argues that the evidence presented at trial was insufficient to support his conviction for using and carrying the shotgun that the police found in the closet. The sufficiency of the evidence to support a jury verdict is a question of law that we review *de novo*, construing the evidence in the light most favorable to the government. *United States v. Harris*, 20 F.3d 445, 452 (11th Cir.1994). "The inquiry is whether a factfinder could find the evidence establishes guilt beyond a reasonable doubt. The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion." *United States v. Garcia*, 13 F.3d 1464, 1473 (11th Cir.) (citing *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989)), *cert. denied*, —— U.S. ——, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994).

The government argues that a jury could reasonably conclude that the shotgun was used as part of a larger scheme to protect the drugs and the money generated by the drugs. To support that inference, the government points to evidence that the apartment, unlike others in the complex, had burglar bars on all the doors and windows; that there was a deadbolt lock on the bedroom door; and that the illegally sawed-off shotgun was found, loaded and easily accessible, in a closet only a few feet from the drugs. Jones argues that there is no evidence that he actually possessed the firearm, and that the evidence of his control over the premises was too weak to support a constructive pos-

session theory. In addition, Jones argues that there was neither proof that the shotgun was used or carried "during and in relation to" the drug offense, as required by 18 U.S.C. § 924(c)(1), nor proof that Jones had the requisite intent to use the weapon to facilitate drug trafficking. Jones disagrees that a jury could conclude beyond a reasonable doubt that the weapon was used to facilitate drug transactions, particularly given that he was not even in the apartment; he observes that the shotgun "was not a 'spring-gun' . . .; it could not protect the drugs by itself."

■ "To establish a violation of 18 U.S.C. § 924(c)(1) in this circuit, the government must show the defendant (1) either actually or constructively possessed the firearms, and (2) used or carried the firearms during and in relation to the drug trafficking offense." *United States v. Smith*, 957 F.2d 835, 835 (11th Cir.1992), *aff'd*, —— U.S. ——, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). As *Smith* clearly states, the government may satisfy the first requirement by producing evidence of constructive possession. In a recent case reviewing the sufficiency of the evidence to support a conviction for drug possession, we held that "[t]he government may prove constructive possession if it shows a defendant maintained dominion or control over the drugs or over the premises where the drugs are located." *United States v. Harris*, 20 F.3d 445, 453 (11th Cir.1994). The same rule applies to the possession of a firearm; if a jury could reasonably infer, beyond a reasonable doubt, that Jones had dominion or control over the premises in which the shotgun was found, then the government has met its burden of establishing constructive possession.

In *United States v. Derr*, 990 F.2d 1330 (D.C.Cir.1993), the Court held that the government had proven that the defendant constructively possessed a handgun found in a closet by showing that the defendant slept in the room where the closet keys were found, that the defendant reached for the keys, and that the defendant's birth certificate was in the closet with the handgun. *Id.* at 1332, 1337. In this case, the government produced evidence from which a jury could reasonably conclude beyond a reasonable doubt that Jones had dominion and control over the apartment in general and the bedroom in particular. Jones listed the apartment as his address on numerous occasions; the police found bills on the bed addressed to the defendant at the apartment; and the police found a photograph of the defendant wearing a jacket that was found in the closet with the shotgun. Jones argues that others had access to the apartment, but "[c]onstructive possession need not be exclusive." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir.1989).

■ Because there was sufficient evidence to support a finding of constructive possession, the question becomes whether the government satisfied its burden of proving that Jones used or carried the firearm during and in relation to a drug trafficking offense. Use of a firearm "may be established by evidence of possession . . . 'if possession is an integral part of and facilitates the commission of the drug trafficking offense.'" *Smith*, 957 F.2d at 837 (quoting *Poole*, 878 F.2d at 1393). Jones argues that the evidence shows merely that the firearm was present, and that the mere presence of a firearm is insufficient to show that it was used to facilitate his possession of the drugs. Among the cases Jones cites is *United States v. Feliz–Cordero*, 859 F.2d 250, 254 (2d Cir.1988), in which the Second Circuit rejected the proposition that "the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to a warrant." However, this Circuit has rejected *Feliz–Cordero*. *See Poole*, 878 F.2d at 1394.

· The law in this Circuit is that "[t]he presence of weapons in a location that the defendant used to distribute a significant quantity of illegal drugs is sufficient to submit to the jury the issue of whether the defendant used the firearm in connection with a drug trafficking crime." *United States v. Clavis*, 956 F.2d 1079, 1095 (11th Cir.) (citing *Poole*, 878 F.2d at 1393), *cert. denied*, —— U.S. ——, 112 S.Ct. 2979, 119 L.Ed.2d 597, *modified on other grounds*, 977 F.2d 538 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1619,

123 L.Ed.2d 178 (1993). The theory behind this rule is that having firearms easily accessible is "using" those firearms to protect drugs. In *Poole,* guns were found in a utility room in a house in which cocaine and drug paraphernalia were also found. 878 F.2d at 1394. In that case, we held that the following "sequence of inferences" supported the defendant's conviction for using firearms during and in relation to his possession of cocaine with intent to distribute: "defendant was engaged in selling cocaine; the guns were used to protect the house members and the cocaine; and defendant knew the guns were readily accessible in the utility room." *Id.* The sequence of inferences in this case is materially identical, because the jury could conclude that: Jones sold crack cocaine and he possessed it in the apartment; the shotgun was used to protect those who used the apartment and were involved with the drugs; and Jones knew the shotgun was readily accessible in the closet of the bedroom he occupied.

■ Jones disputes the government's contention that the shotgun was part of a larger plan to protect the apartment. *Cf. United States v. Matra,* 841 F.2d 837, 842 (8th Cir. 1988) (holding that the use of firearms found in a house with drugs may be inferred if the jury could conclude that the guns were "'part of a tight security operation to protect large quantities of cocaine'" (quoting *United States v. Grant,* 545 F.2d 1309, 1312 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977))). However, under *Poole,* there is no requirement that the firearm be part of a larger security system; whether one firearm was used to protect drugs is not dependent upon whether additional firearms or other security measures were used to protect the drugs as well. According to *Poole*'s "deferential standard of review of jury verdicts," 878 F.2d at 1394,

the evidence supporting Jones's conviction under § 924(c)(1) is sufficient.[1]

## B. INTRODUCTION OF EVIDENCE RELATED TO GAMBLING

At trial, lists of lottery numbers and bets made in illegal street lotteries, which had been found in the apartment, were admitted into evidence along with similar commercial gambling documents found in Jones's truck in February 1991 and evidence of Jones's 1987 conviction for commercial gambling. The government argues that this evidence tends to show that: the occupant of the apartment in July 1991 was involved in illegal commercial gambling; because Jones had been convicted of illegal commercial gambling in 1987, and because he had been involved in such gambling in February 1991, it was more likely that Jones was involved in such gambling in July 1991; and, therefore, it was more likely that Jones was the one who occupied the apartment in July 1991. Jones argues that the prejudice created by the admission of the extrinsic evidence linking him to commercial gambling substantially outweighed any probative value that the evidence had in establishing the identity of the apartment's resident.

■ The application of a three-part test determines the admissibility, under Fed. R.Evid. 404(b), of evidence that a defendant has committed other crimes: 1) the evidence must be relevant to an issue other than the defendant's character; 2) there must be proof sufficient for a jury to find that the defendant committed the extrinsic act; and, 3) the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and it must otherwise meet the requirements of Fed.R.Evid. 403. *United States v. Miller,* 959 F.2d 1535, 1538 (11th Cir.) (en banc), *cert. denied,* —— U.S. ——,

---

1. Jones also contends that the district court erred in giving a supplemental instruction on this charge. When the jury asked whether "[h]aving access [to] a gun mean[s] the same as use and carry?", the district court answered that the jury could "take into consideration all of the facts and circumstances surrounding what occurred in that apartment .... in attempting to arrive at what is meant by use and carry." Jones argues that the instruction allowed the jury to create its own definition of "use and carry." However, under law of this Circuit, the proper answer to the jury's question is that having access to a firearm in a location with drugs, such as the apartment in question in this case, *is* using the firearm to protect the drugs. We are confident that had the jury received the proper answer, the verdict would have been the same. Any error was therefore harmless.

113 S.Ct. 382, 121 L.Ed.2d 292 (1992). We review a district court's admission of evidence under Rule 404(b) for an abuse of discretion. *United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir.1993).

To satisfy the first prong of the test, the evidence of Jones's prior gambling activity must be relevant to an issue other than Jones's character, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed. R.Evid. 404(b). The government offered the gambling evidence to show the identity of the person involved in the illegal commercial gambling going on in the apartment, and thereby to establish the identity of the apartment's resident. The 404(b) standard has been described as "particularly stringent" when evidence of extrinsic crimes is offered to show identity by showing that because the defendant committed one crime, it was the defendant who committed another. *United States v. Stubbins*, 877 F.2d 42, 44 (11th Cir.), *cert. denied*, 493 U.S. 940, 110 S.Ct. 340, 107 L.Ed.2d 328 (1989). "[T]he likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi." *Miller*, 959 F.2d at 1539 (quoting *United States v. Beechum*, 582 F.2d 898, 912 n. 15 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)). The test has also been described as requiring a " 'signature' trait" sufficient to identify both crimes as the work of one individual. *United States v. Lail*, 846 F.2d 1299, 1301 (11th Cir.1988).

■ The "uniqueness of the *modus operandi* and the degree of similarity" between the prior crimes and the one that the government is trying to attribute to the defendant determine the probity of the evidence of the prior crimes. *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977). Whether evidence of extrinsic crimes is relevant to show identity, or is merely evidence of character or propensity, may therefore be described as turning upon the evidence's probative value. If the *modus operandi* of the crimes is sufficiently rare, then the probative value of that evidence is high enough to constitute evidence of the defendant's identity. If the evidence of the prior crimes includes no significant signature trait, then its probative value is so low that it is considered to be mere propensity or character evidence.

The signature trait requirement is therefore a recognition that "[a] defendant cannot be identified as the perpetrator of the charged act simply because he has at other times committed the same commonplace variety of criminal act except by reference to the forbidden inference of propensity," i.e., of bad character. 2 *Weinstein's Evidence* ¶ 404[16], at 404–101 (1992). In the typical case in which evidence of other crimes is introduced to show identity, the government introduces evidence that the defendant committed a prior offense in a manner similar to that in which the crime charged was committed. The signature trait requirement is imposed to insure that the government is not relying on an inference based on mere character—that a defendant has a propensity for criminal behavior.

■ In this case, the connection between Jones's prior gambling activity and his identity as a drug trafficker is attenuated. The government wanted the jury to conclude that Jones occupied the apartment because slips that evidenced illegal commercial gambling were found in the apartment, and because Jones had been involved in such gambling in the past. Such a conclusion was based upon reasoning that because Jones had been a numbers runner in the past, Jones was likely to have been numbers running when the apartment was raided. The fact that Jones was not charged with illegal gambling does not alter the inference that the government wished the jury to draw—that because Jones committed gambling offenses previously, he was more likely to commit them in the future. Absent evidence of an unusual *modus operandi*, that inference relies on mere propensity. The signature trait requirement therefore must be applied in this situation as well.

To be admissible under Rule 404(b), Jones's 1987 and February 1991 gambling crimes must demonstrate a *modus operandi*, or signature trait, similar to that demonstrated by the July 1991 gambling crime committed

ted by the occupant of the apartment involved in this case. In *Lail,* at the defendant's trial for two bank robberies, the government introduced evidence of a third, earlier, bank robbery. 846 F.2d at 1300. All three robberies were committed within a period of one month, by a lone gunman, armed with a handgun, who made no effort to disguise himself. *Id.* at 1301. Nevertheless, we held that the evidence of the third robbery was inadmissible under Rule 404(b), because the government failed to demonstrate a similar *modus operandi*—the robber in the third incident carried dynamite, posed as a businessman, and made two trips to the bank, none of which was true of the later robberies. *Id.*

In the present case, the government presented no evidence of a *modus operandi.* The government's expert witness testified only that the documents taken from Jones's truck in February and those found in the apartment in July, were related to illegal commercial gambling in general—*not* that they represented any particular *modus operandi* or indicated that any particular gambling operation was involved. There was no indication that Jones wrote the documents. According to the government's own gambling expert, ten to fifteen thousand people place bets with illegal gambling operations in Atlanta, and there are fifteen to twenty major illegal gambling operations; yet the government made no effort to distinguish the gambling documents found in the apartment from the kind of documents used by any of the other operations. We do not know how many scores, or hundreds, of people in Atlanta possess such documents each day. The government offered no evidence to narrow the possibilities. Instead, the government simply argued that because Jones was involved in illegal commercial gambling in 1987, and in February 1991, it was Jones who was involved with such gambling in the apartment in July 1991. Without any evidence that Jones's earlier gambling crimes and the July 1991 gambling crime were committed in some unusual manner, the probative value of the evidence was so slight that the documents do not constitute relevant evidence of identity, but are merely inadmissible evidence of Jones's character—of his pro-

pensity to commit gambling offenses. The district court therefore abused its discretion in admitting the gambling documents and Jones's prior conviction.

■ Even if the gambling evidence satisfied the first prong of the three-prong test laid out in *Miller,* the third prong calls for "the incremental probity of the evidence ... to be balanced against its potential for undue prejudice." *United States v. Beechum,* 582 F.2d 898, 914 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). In applying this prong, we are mindful that "prior crime evidence has significant potential for prejudicial effect, and therefore should not be employed unless really necessary." *United States v. Baldarrama,* 566 F.2d 560, 568 (5th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3094, 57 L.Ed.2d 1136, *and cert. denied,* 439 U.S. 844, 99 S.Ct. 140, 58 L.Ed.2d 145 (1978). If the government has a strong case without the extrinsic offense, then the prejudice to the defendant will more likely outweigh the marginal probative value. *See United States v. Hernandez,* 896 F.2d 513, 521 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990). "In other words, if the government can do without such evidence, fairness dictates that it should; but if the evidence is essential to obtain a conviction, it may come in. This may seem like a 'heads I win; tails you lose' proposition, but it is presently the law." *United States v. Pollock,* 926 F.2d 1044, 1049 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

■ The government's case on the identification of Jones as the resident of the apartment was strong without the evidence of Jones's prior illegal gambling activity, which was at most merely cumulative evidence that Jones occupied the apartment. The police found photographs of Jones at the apartment, and in the photographs he was wearing clothes that were also found in the apartment. The police also found utility bills made out in Jones's name, and bearing the apartment's address, as well as his birth certificate. Finally, not only did Jones's driver's license and truck registration list the apartment as his address, but Jones himself gave the apartment as his address when he was arrested. Given the low probative value

of the prior gambling crimes evidence and the great potential to prejudice the defendant involved in the admission of evidence of past crimes, the gambling evidence is inadmissible under the third prong as well.

■ Having determined that the district court abused its discretion in admitting the evidence of Jones's prior gambling activity, we turn to the question of whether that error was harmless. Although a risk of prejudice might justify the exclusion of evidence as an initial matter, "[a] district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993). We have previously held that an error in the application of Rule 404(b) is harmless when there is overwhelming evidence of the defendant's guilt. *See, e.g., United States v. Hosford*, 782 F.2d 936, 939–40 (11th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986).

■ The evidence of Jones's illegal gambling activity should not have been admitted into evidence. In view of the overwhelming evidence against him, however, we are confident that the error was harmless.[2]

## C. JONES'S SENTENCE FOR POSSESSION OF AN UNREGISTERED SAWED–OFF SHOTGUN

■ The government has conceded that the district court erred in sentencing Jones to 168 months imprisonment for possession of an unregistered sawed-off shotgun, to be served concurrently to his 168-month sentences for distribution of crack cocaine and possession of crack cocaine with intent to distribute. The statutory maximum sentence for possession of an unregistered sawed-off shotgun is ten years. 26 U.S.C.A. § 5871 (1989). The government suggests, however, that because of the "concurrent sentence doctrine," we need not reverse Jones's sentence.

Under the concurrent sentence doctrine, "[t]he existence of one valid conviction may make unnecessary the review of other convictions when concurrent sentences have been given, provided there are no adverse collateral consequences to a defendant as a result of the concurrent sentence." *United States v. Hudacek*, 24 F.3d 143, 145 n. 1 (11th Cir. 1994). In this case, however, the error is plain and the government has conceded it, so little or no review is necessary to decide the matter. Furthermore, it is a simple error to correct. For these reasons, we exercise our discretion not to apply the concurrent sentence doctrine, we vacate this one sentence, and we remand for correction of the error in it.

## III. CONCLUSION

All of Jones's convictions are AFFIRMED. All of his sentences are AFFIRMED, except for the sentence he received for possession of the unregistered sawed-off shotgun, which sentence is VACATED. The case is REMANDED for correction of that sentence.

---

**2.** We may quickly dispose of Jones's other contentions relating to his convictions. Jones argues that the district court erred in instructing the jury that evidence of acts similar to those charged could be considered to prove Jones's intent, but not that Jones committed the crimes charged. Jones argues that the instruction referred to the gambling evidence, and allowed the jury to infer from that evidence that Jones possessed the intent to distribute drugs. The government contends that the instruction referred only to the fact that Jones was charged with trafficking drugs on two separate occasions. Whichever is the case, Jones did not object at trial, and we find that the giving of the limiting instruction did not rise to the level of plain error.

Jones also contends that his convictions must be reversed because the prosecutor twice elicited testimony that marijuana was found with the crack cocaine in Jones's truck, when the district court had previously determined that the marijuana evidence should be excluded. Jones argues that the prosecutor's action raises the risk that the jury convicted him of trafficking in cocaine in order to punish him for possessing marijuana. We only reverse on the basis of prosecutorial misconduct where that misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir.1987) (internal quotation omitted). We do not find that the comments were elicited recklessly. Even if they had been, the two oblique references to marijuana in this case do not amount to misconduct that permeated the atmosphere of the trial. We therefore reject Jones's contention.