[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10084
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00150-CR-RWS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SOUKSAKHONE PHAKNIKONE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 10, 2010)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PRYOR, Circuit Judge:

The main issue presented in this appeal is whether the district court abused

its discretion by admitting the profile page, subscriber report, and photographs from the MySpace.com account of Souksakhone Phaknikone to prove that he committed a string of bank robberies "like a gangster." Fed. R. Evid. 404(b). Phaknikone appeals his fifteen convictions of armed bank robbery, 18 U.S.C. § 2113(a), (d), carrying a firearm in relation to a crime of violence, id. § 924(c), and possession of a firearm by a convicted felon, id. § 922(g)(1), and his sentence of 2,005 months of imprisonment for those convictions. Phaknikone argues that the district court abused its discretion by admitting the MySpace evidence because it was offered to prove that he acted in conformity with his bad character. We agree, but in the light of the overwhelming evidence of Phaknikone's guilt, the error was harmless. We also reject Phaknikone's remaining arguments that the district court abused its discretion in its answer to a question of the jury; that section 922(g)(1) violates the Commerce Clause; that the district court misinterpreted section 924(c); and that his sentence is unreasonable. We affirm Phaknikone's convictions and sentence.

## I. BACKGROUND

Between November 2006 and March 2007, armed men robbed six banks within a 40-mile radius in Northeast Georgia. Two masked men robbed two of the banks; a single masked robber robbed the other four. The proximity of the banks,

2

as well as evidence that the robberies were carried out in a similar manner, suggested to law enforcement agencies that the robberies were related. Eyewitnesses reported that the robbers "entered the bank brandishing, waving, and pointing semi-automatic pistols, and shouting profane language at employees," and one robber "always jumped the teller counter."

On April 6, 2007, two masked robbers, described by eyewitnesses as Hispanic or Asian men who carried handguns, robbed a seventh bank in the area, the Wachovia Bank in Suwanee, Georgia. One of the robbers, Rickey Lavivong, forced all bank employees into the lobby of the bank. The other robber, later identified as Phaknikone, a 27-year-old Laotian male living in Dacula, Georgia, jumped over the teller counter, ordered the tellers to lie on the floor, and demanded money from the cash drawers. As the tellers emptied the drawers, Phaknikone made specific commands that the tellers not give him "the ink thing," that is, a dye pack that explodes after a robbery and permanently marks bills with red or blue ink. Phaknikone took the money from the drawers, removed the dye packs, and ran with Lavivong out of the bank. The two men left in a car they had parked in an adjacent parking lot of a supermarket.

Police officers followed the car, and after a six-mile, high-speed pursuit, Phaknikone crashed the car and fled on foot while Lavivong remained in the car.

3

While he ran, Phaknikone dropped money, a backpack, and a handgun. He tried to scale a chainlink fence, but he became entangled in barbed wire at the top. The officers arrested Phaknikone and found a gun clip and $10,000 in cash in his pockets, as well as a handgun nearby and $6,000 in cash in the backpack. In the getaway car, officers found another handgun and ski masks.

Officers transported Phaknikone to a field office of the Federal Bureau of Investigation where Phaknikone waived his rights to remain silent and to counsel and confessed to Agents Ray Johnson, Douglas Rambaud, and Scott Stefan that he had robbed the Wachovia Bank in Suwanee. The agents also questioned Phaknikone about some of the other similar robberies. Phaknikone confessed to robbing three of the banks.

Phaknikone described his earlier robberies in detail. He confessed that he and an accomplice stole approximately $5,000 from a bank in Lawrenceville, Georgia, before Christmas 2006. He and his accomplice were armed and left the bank in a stolen car that they later abandoned at a nearby trailer park. Phaknikone confessed that he and an accomplice stole approximately $14,000 from a bank in Lawrenceville in mid-January 2007. They used the same handgun as in the December 2006 robbery, intimidated the bank tellers, and left the stolen getaway car at a nearby shopping center. Phaknikone confessed that he also robbed a bank

4

"near Old Norcross Road" in "late February or early March 2007." He used the same handgun as in the other two robberies and again used a stolen car to flee the scene. Phaknikone recounted to the agents that, as he left the bank, a dye pack exploded, and he had to discard all the stolen money. During the interview, the agents seized the hooded sweatshirt and black athletic shoes Phaknikone was wearing so that they could compare the evidence to surveillance photographs and shoe prints taken from the other robberies.

Phaknikone was charged with seven counts of armed bank robbery, id. § 2113(a), (d), seven counts of carrying a firearm in relation to a crime of violence, id. § 924(c), and one count of possession of a firearm by a convicted felon, id. § 922(g)(1). Each count of carrying a firearm in relation to a crime of violence was tied to each count of armed bank robbery. The robbery counts charged the robberies of seven financial institutions in the state of Georgia: (1) Bank of America in Lilburn on November 21, 2006; (2) First Bank of the South in Lawrenceville on December 19, 2006; (3) Wachovia Bank in Lawrenceville on January 11, 2007; (4) People's Bank in Braselton on January 31, 2007; (5) Hometown Community Bank in Braselton on February 15, 2007; (6) Wachovia Bank in Duluth on March 9, 2007; and (7)Wachovia Bank in Suwanee on April 6, 2007. Phaknikone pleaded not guilty to all fifteen counts.

At trial the prosecution argued that all the bank robberies shared a signature trait, a modus operandi, that linked them to the same robber. Each robbery lasted less than three minutes and involved one or two masked robbers who carried guns and shouted profanities at bank tellers. One of the robbers vaulted the teller counter, demanded that the tellers empty their cash drawers, and sometimes instructed them not to give him any "ink thing" or "funny money." In each robbery, at least one robber wore a black ski mask, a hooded sweatshirt, white-topped gloves, black athletic shoes, and held his handgun "gangster-style" in his left hand. The prosecution also contended that one of the signature traits of the common culprit in all seven robberies was to rob the banks like a gangster.

Before trial, the government moved to admit photographs obtained from Phaknikone's MySpace account. The government argued that the photographs were inextricably intertwined with Phaknikone's charged offense of possession of a firearm by a convicted felon and, alternatively, the evidence was admissible to prove knowledge, identity, intent, and motive as to possession of the firearm. Phaknikone moved in limine to exclude the evidence. He argued that the photographs were not linked in time or circumstances to the charged offenses and were inadmissible character evidence.

Eventually the prosecution sought to admit four items from Phaknikone's

6

MySpace account: Phaknikone's profile page, the associated subscriber report, and two photographs. Social networking websites allow users to create a "profile" of themselves, which is accessible to anyone on the internet. Profiles allow users to aggregate selected information about themselves in one place, and profiles typically include photographs of the associated user, most frequently as a profile photograph, the main photograph associated with a user's account. A basic subscriber report is information kept in the ordinary course of business by MySpace. It lists a user's unique identification number, registered first and last name, location, email address, date of registration, and IP address at registration. MySpace also retains as part of this report all of the profile photographs a user has posted.

Phaknikone's profile lists his name as "Trigga" and describes him as a 28-year-old male living in Dacula, Georgia. When a user visits Phaknikone's profile page, this information appears along with several photographs and $100 bills that float down the screen. The song "Smile" by rap musician Tupac plays in the background.

Phaknikone's subscriber report is three pages. The report lists his full name as "Trigga FullyLoaded," located in Dacula, Georgia, with an email address of "gangsta_trigga@yahoo.com," and it contains five profile photographs.

7

The government also sought to introduce, as separate exhibits, two photographs posted on Phaknikone's profile page. The first photograph was Phaknikone's then-current MySpace profile photograph, which showed him with his arm around his ex-wife at a formal party. The second photograph was embedded in Phaknikone's profile page, further down the page. Phaknikone is pictured in the driver's seat of a car wearing a tank-top shirt, sunglasses, and a hat. His left arm is hanging out the open driver's window, and he is holding a handgun in his right hand. Two tattoos are visible: a large tattoo down his left arm and another on the left side of his neck. A passenger, who appears to be male, is sitting in the front passenger seat and is shown from the neck down. In his left hand, the passenger is holding a package the size of a cigarette box, and his right arm is outstretched to the back seat, where a young child is seen reaching forward to take something from the passenger. The child's left hand is resting on Phaknikone's seat. Although only the right arm, the left hand, and most of the head of the child are visible in the photograph, it is clear that the passenger in the backseat is a child.

After the jury was empaneled, the government argued that the photographs were admissible to prove that "[Phaknikone]'s an individual who has access to having a gun, as shown and as evidenced by the brazen nature with which he publishes it to every single person on the internet through a MySpace account. . . .

8

[I]t shows knowledge, it shows familiarity with guns." The photographs, the government argued, bolstered its theory that "the guy who robbed the bank on [April 6] was the same one who robbed the six other banks previous to that; and that individual is somebody who, like the defendant, would put a picture of himself on his MySpace account."

The district court expressed concerns that the MySpace evidence was "uniquely character evidence":

> [Government]: There's a certain image that the defendant is portraying on his MySpace account [that] is indicative of the type of person who's going to commit these crimes. And if we were to exclude just the picture, you wouldn't be able to portray the full picture that the defendant is portraying of himself.
>
> The Court: Isn't that uniquely character evidence?
>
> [Government]: Uniquely character --
>
> The Court: Well, I mean, it's evidence to show the kind of person that he is. Those aren't the words you used, but essentially, this is the kind of person he wants to portray himself as being or the kind of person that he is.
>
> [Government]: . . . I mean, a picture with a gun, again, is not sort of I'm this person who's, you know, person who's going to carry a gun. It's for other purposes that we're seeking to introduce it. . . .
>
> . . . [I]t goes to the [modus operandi] that he has a gun in a car. And you're going to hear about the car and that this car in this picture was most likely the car that he drove on the last robbery which he was arrested in, and it also is the lack of mistake with respect to the gun.

9

The government argued that the photographs provided a means for Lavivong to identify Phaknikone's lifestyle and image:

> I anticipate that [Lavivong] will also describe what the defendant's [modus operandi] was, in fact, and how—in addition to robbing banks, but also just the way he [is] in those pictures, the type of lifestyle he led, driving around in his car . . . that those pictures are consistent with his image and impression of the defendant. . . . Again, I'm not talking about the 404(b) negative bad character image. I'm just talking about the image that he would portray himself and the way that [Lavivong] saw him.

The district court took the issue under advisement and the following morning informed the parties that the photographs likely would be admitted.

During trial, and before the district court admitted the MySpace evidence, the government called Rickey Lavivong as a witness. Lavivong testified that he knew Phaknikone only by the name "Trigga," "like a trigger of a gun," and that he and Phaknikone robbed the Wachovia Bank in Suwanee together on April 6, 2007. Lavivong testified that Phaknikone persuaded him to rob the bank because Lavivong was impressed with "the money and the cars and the glory." Lavivong also testified that he knew that Phaknikone had a MySpace account. Without publishing the photographs, profile page, or subscriber report, the government laid the foundation for the MySpace evidence by showing the photographs, profile page, and subscriber report to Lavivong, who identified Phaknikone as the person pictured.

10

The district court heard additional argument about the MySpace evidence during a break in witness testimony. The district court stated that "it's pretty obvious to me what the probative purpose for those [photographs] is," and admitted the photographs into evidence over Phaknikone's objection that they were character evidence and "unduly prejudicial in light of the child in the car." The MySpace profile page and subscriber report troubled the district court more: "I mean this is a case about identity. . . . And I'm not sure how this page shows that [Phaknikone] committed other bank robberies. It shows character, to me."

The government argued that the MySpace profile page, subscriber report, and photographs were admissible to establish that "this is who the defendant really is":

> [T]he problem is, Your Honor, that the character is so—it's a character of a bank robber; and, you know, so I don't [sic]—and that's a gangster who is a gangster because he robs banks.
>
> So I guess you can call it character, but you can also call it bank robber. And it's—because it's a—it does—I feel that character evidence that somebody is a gangster and that gangster has robbed banks is where we're getting all wrapped up. But you can call it character evidence, but you can also call it as going to show that this is the type of person who robs banks, but not because of the character of being a—you know, I mean, it is character, but it's a fine line between it being a character but also being indicative of a bank robber.

The district court was unpersuaded: "And what about Trigga Fully Loaded and

11

gangsta connects to bank robber other than bad actor and guy who totes a piece?" The district court ruled that the MySpace profile page and subscriber report were inadmissible.

Undeterred, the government offered to redact portions of the profile page and subscriber report to address the concern of the district court. The government argued that the redacted pages would prove that someone named Trigga, who lived in Dacula, Georgia, Phaknikone's hometown, posted photographs of Phaknikone on MySpace. The government explained that its purpose for introducing the profile page, subscriber report, and photographs was to portray Phaknikone as a gangster:

> [H]e is proud of the fact that he emulates and behaves like a gangster. He's not someone that's described like [his ex-wife] described, which is very concerned about his family reputation and is going to be concerned about whether or not to marry her . . . . He emulates the lifestyle of a gangster and he robbed these seven banks like a gangster, holding his gun a certain way, using that type of language, that kind of lingo.
>
> . . . .
>
> . . . But what we can tell the jury is these pictures are posted on MySpace, on the MySpace page for someone by the name of Trigga, if we're not allowed to use the last name of Fully Loaded, and it is from Trigga who lives in Dacula . . . ; and it is personal pictures of the defendant, his ex-wife, the defendant and his gun and his, his gangster-type personality, his identity that he personifies. And the defendant sitting in the courtroom today doesn't look like he does when he's being his gangster self, robbing banks, hanging out with his

friends, hanging out with his ex-wife.

    . . . .

    . . . He may not look like he's gangster style as he sits here in the courtroom, but he is. And that's evidence that we have to put in front of the jury for identification purposes.

The district court did not admit the profile page, but after the government laid a foundation through the testimony of an employee of MySpace, the district court admitted into evidence a redacted version of the subscriber report. The redacted report contained the profile photographs of Phaknikone and showed the user's first name as "Trigga," his location as Dacula, Georgia, and his email address as "trigga@yahoo.com."

The prosecutor referred to the modus operandi of the robberies in his closing argument to the jury, but he focused mainly on the physical similarities of the robberies instead of their "gangster style." The prosecutor referred to Phaknikone as Trigga, and he showed the jury the MySpace photograph of Phaknikone in a car holding a gun to remind them of the identifying tattoo on Phaknikone's neck. The district court gave the jury a limiting instruction that the evidence could be considered to prove only intent or absence of mistake or accident.

The jury deliberated for nearly two days. During that period, the jurors submitted four questions to the district court, including whether testimony from

13

Agent Rambaud was hearsay or evidence. Agent Rambaud had testified about Phaknikone's statements during the post-arrest interview at the field office of the Federal Bureau of Investigation. Counsel for Phaknikone had objected to the testimony as cumulative to testimony from Agent Johnson about Phaknikone's statements. The district court overruled the objection because Agent Johnson's testimony "was not particularly specific, it was more generalized."

Phaknikone's attorney requested the district court include in its response to the jury the Eleventh Circuit Basic Jury Instruction No. 5 about the credibility of witnesses. The district court denied the request and instead instructed the jury to consider the testimony and its previous charge:

> [A]ny testimony that was given during the trial is evidence . . . . What I have just said to you should not be taken out of context, and you should not give undue weight to what I have just said to you. Everything I say to you must be taken in the context of the entire jury charge I gave you, and everything I told you in that jury charge applies to what I said to you now and the matters that you have raised here.

The jury found Phaknikone guilty of all fifteen counts in the indictment.

Phaknikone was sentenced to 2,005 months of imprisonment. The district court determined that each of Phaknikone's sentences for his convictions of possession of a firearm during a crime of violence, 18 U.S.C. § 924(c), must run consecutively to the others and consecutive to the sentence of 121 months for the

14

robberies, which was at the low end of the guideline range. The district court also interpreted section 924(c) to require a minimum sentence of seven years for the first conviction under the statute, and a sentence of 25 years for each additional conviction under the statute.

## II. STANDARDS OF REVIEW

We apply three standards of review in this appeal. "We review a district court's decision to admit evidence pursuant to Rule 404(b) pursuant to the abuse of discretion standard." United States v. Brown, 587 F.3d 1082, 1091 (11th Cir. 2009). We review for abuse of discretion the response of the district court to questions from the jury. United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991). "We review the constitutionality of statutes de novo." United States v. Scott, 263 F.3d 1270, 1271 (11th Cir. 2001). We review questions of statutory interpretation de novo. United States v. Rahim, 431 F.3d 753, 756 (11th Cir. 2005). We review sentences for reasonableness. United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765–66 (2005). Although we do not apply a presumption of reasonableness to within-guidelines sentences, "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

## III. DISCUSSION

Our discussion of this appeal is divided in four parts. We first discuss the admissibility of the MySpace evidence and whether its admission was harmless error. We then discuss the answer of the district court to the question of the jury. We next discuss whether section 922(g)(1) violates the Commerce Clause. We finally discuss Phaknikone's sentence.

### A. The Evidence About Phaknikone's MySpace Account Was Inadmissible Character Evidence, but Its Admission Was Harmless.

Phaknikone argues that the evidence about his MySpace account was inadmissible because it was evidence of a bad character that was offered for no purpose other than "to show action in conformity therewith." Fed. R. Evid. 404(b). The government responds that the evidence was admissible to prove identity or, in the alternative, that any error was harmless. We agree with Phaknikone that the photographs were inadmissible character evidence, but we agree with the alternative argument of the government that the error was harmless.

We employ a three-part test to determine whether a district court abused its discretion by admitting evidence of prior bad acts under Federal Rule of Evidence 404(b): "First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act." United

16

States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc) (footnote omitted); see also United States v. Beechum, 582 F.2d 898, 901 n.1 (5th Cir. 1978) (en banc). Third, the probative value of the evidence must not be "substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." Miller, 959 F.2d at 1538. We apply this test "whenever the extrinsic activity reflects adversely on the character of the defendant, regardless whether that activity might give rise to criminal liability." Beechum, 582 F.2d at 901 n.1.

Our application of this test to evidence introduced under Rule 404(b) "var[ies] depending on the issue for which it was offered." United States v. Lail, 846 F.2d 1299, 1301 (11th Cir. 1988). Evidence of prior bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 404(b) "is a rule of inclusion . . . [and] 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (internal quotation marks omitted).

The government argues that it introduced the MySpace evidence to prove identity, that is, that Phaknikone robbed the banks, but evidence offered to prove identity must satisfy a "particularly stringent" analysis. United States v. Jones, 28

17

F.3d 1574, 1580 (11th Cir. 1994) (internal quotation marks omitted), rev'd on other grounds, 516 U.S. 1022, 116 S. Ct. 663 (1995); United States v. Stubbins, 877 F.2d 42, 44 (11th Cir. 1989); Lail, 846 F.2d at 1301.  "When extrinsic offense evidence is introduced to prove identity, 'the likeness of the offenses is the crucial consideration.  The physical similarity must be such that it marks the offenses as the handiwork of the accused.  In other words, the evidence must demonstrate a modus operandi.'"  Miller, 959 F.2d at 1539 (quoting Beechum, 582 F.2d at 912 n.15); see also United States v. Cardenas, 895 F.2d 1338, 1342 (11th Cir. 1990).  "The extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his."  Miller, 959 F.2d at 1540 (Kravitch, J., concurring).  "The signature trait requirement is imposed to insure that the government is not relying on an inference based on mere character—that a defendant has a propensity for criminal behavior."  Jones, 28 F.3d at 1580.  Evidence cannot be used to prove identity "'simply because [the defendant] has at other times committed the same commonplace variety of criminal act.'"  Id. (quoting 2 Weinstein's Evidence ¶ 404[16], at 404–101 (1992)).

The government argued at trial that Phaknikone robbed the banks "like a gangster," and on appeal the government continues to press the argument that the MySpace evidence proves this so-called modus operandi.  In its brief to us, the

18

government argues that it offered the evidence to prove that someone who shows off a gun in his car would commit the seven bank robberies: "The MySpace evidence therefore properly was admitted for the jury to consider in determining the identity of the defendant as the masked, semiautomatic hand gun wielding, gangster-imitating, profane-language-speaking bank robber described by the victims and eyewitnesses of the robberies." This argument fails.

The MySpace evidence fails the first part of the Miller test. The MySpace evidence is not evidence of identity: that is, evidence that Phaknikone robbed banks like a gangster. The subscriber report proved nothing more than Phaknikone's nickname, the only name by which Lavivong had already testified he knew Phaknikone. The profile photographs accompanying the subscriber report and the photograph of Phaknikone and his ex-wife at a social event offer nothing to support a modus operandi about the bank robberies. The photograph of a tattooed Phaknikone, his face completely visible, in a car, holding a handgun sideways in his right hand, and with a child as a passenger, proves only that Phaknikone, on an earlier occasion, possessed a handgun in the presence of a child. Although the photograph may portray a "gangster-type personality," the photograph does not evidence the modus operandi of a bank robber who commits his crimes with a signature trait. The MySpace evidence is not evidence of a modus operandi and is

19

inadmissible to prove identity.

Because the MySpace evidence fails the first requirement of the Miller test, we need not address its second and third requirements. The MySpace evidence is classic evidence of bad character, which was offered by the government to prove only "action in conformity therewith." Fed. R. Evid. 404(b). The government wanted the jury to infer that, because Phaknikone is willing to publish these kinds of photographs online, under an incendiary alias, he is a gangster who is likely to rob banks. The district court abused its discretion by admitting the MySpace evidence.

Whether the admission of the MySpace evidence was harmless is another question. The government bears the burden of establishing that an error is harmless. United States v. Sweat, 555 F.3d 1364, 1367 (11th Cir. 2009). Reversal is warranted "only if [the error] resulted 'in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.'" United States v. Guzman, 167 F.3d 1350, 1353 (11th Cir. 1999) (quoting United States v. Lane, 474 U.S. 438, 449, 106 S. Ct. 725, 732 (1986)). We view the entire record to resolve this question. United States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004). "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." Guzman, 167 F.3d at 1353.

20

The error of admitting the MySpace evidence is harmless. We cannot say that the MySpace evidence had a "substantial and injurious effect" on the jury. The record contains overwhelming evidence of Phaknikone's guilt.

The government presented ample evidence that tied Phaknikone to each of the seven robberies charged in the indictment, including Phaknikone's confession to four of the robberies. Phaknikone confessed to Agents Johnson and Rambaud that he robbed the Wachovia Bank in Suwanee on April 6, 2007, and his lawyers conceded guilt on this count at trial. Phaknikone told the tellers not to give him "the ink thing." Rickey Lavivong testified that he and Phaknikone robbed this bank together. Phaknikone also confessed to Agents Johnson and Rambaud that he robbed the Wachovia Bank in Duluth on March 9, 2007, but that a dye pack exploded and he was unable to keep the money. The government corroborated this confession by presenting evidence that all the money from this robbery was found at the scene, marked by dye. A forensic examiner testified that shoe prints lifted from the bank "correspond[ed] in design and physical size" to the black athletic shoes Phaknikone was wearing at the time of his arrest. Surveillance photographs taken from the bank corroborated that the robber wore black athletic shoes. For the robbery of the Hometown Community Bank in Braselton on February 15, 2007, the government proved that the robber wore the same kind of white hooded

21

sweatshirt, with the word "Eckō" stitched on the front in gold letters, that Phaknikone was wearing when he was apprehended. A bank teller testified that earlier on the day of the robbery, a man shorter than five-foot-seven, with a tattoo on his left neck, surveilled the bank. The teller testified that the tattoo on Phaknikone's neck matched the one she remembered seeing on the man in the bank. Investigators obtained shoe prints from the crime scene identical in physical size and design with the black athletic shoes seized from Phaknikone after his arrest, and surveillance photographs taken from the bank confirmed that the robber wore black athletic shoes. For the robbery of the People's Bank in Braselton on January 31, 2007, the government proved, with surveillance photographs, that the robber wore the same kind of hooded sweatshirt, with a gold left arm, black right arm, white front and back, and a black, gold, and white hood, worn by the robber of the Wachovia Bank in Duluth on March 9, a robbery that Phaknikone had confessed he committed. The head teller at the People's Bank testified that she saw a man with a tattoo on the left side of his neck enter the bank in the week before the robbery, and the branch manager testified that the man's eyes matched the eyes of the robber. Surveillance photographs also showed the robber wearing black shoes, and a shoe print on the teller counter matched the design and physical size of Phaknikone's black athletic shoes. The robber instructed the tellers not to

22

give him any dye packs or bait money. Phaknikone also confessed to Agents Johnson and Rambaud that he robbed the Wachovia Bank in Lawrenceville on January 11, 2007. In his confession, Phaknikone stated that he stole approximately $14,000; in fact, $14,324 was stolen. Cynthia Myers, a special agent with the Federal Bureau of Investigation, executed a search warrant at Phaknikone's home and found in his closet a black, zip-down hooded sweatshirt, with four orange, yellow, and white stripes and the word "Enyce" stitched on the front, that was identical with the sweatshirt worn by one of the robbers in surveillance photographs taken from the bank. Phaknikone also confessed to Agents Johnson and Rambaud that he robbed the First Bank of the South in Lawrenceville on December 19, 2006, and that he fled in a stolen Toyota car that he later abandoned in a trailer park. Within one hour of the robbery, authorities found a stolen Toyota car abandoned in that trailer park. The branch manager of the bank testified at trial that she saw the robber before he put on his ski mask, and she identified Phaknikone as the robber. Surveillance photographs showed the robber wearing black shoes, and a shoe print pulled from the bank matched the design and physical size of Phaknikone's black athletic shoes. For the robbery of the Bank of America in Lilburn on November 21, 2006, the government proved, with surveillance photographs, that the robber wore black shoes. A shoe print on the teller counter

matched the design and physical size of Phaknikone's black athletic shoes.  A teller testified that the robber instructed them not to give him any "funny money."  The government also presented evidence that eyewitnesses described the robber as "black or Asian," and the day before the robbery, a man of Phaknikone's size and description, who had a tattoo on his neck, came into the bank to inquire about opening an account.

Although we have explained that the MySpace evidence does not evince a modus operandi, the government introduced other evidence that the robberies were committed in a like manner.  The robberies all were committed within a radius of 40 miles.  Eyewitnesses to each robbery testified that the robbers wore black ski masks, waved handguns while shouting profanities, and one robber always jumped the teller counter.  Other evidence established that the robbers always wore white-topped gloves and hooded sweatshirts and one robber always carried a semi-automatic handgun sideways in his left hand.  Each robbery lasted less than three minutes, and in three of the robberies, a robber instructed a teller not to place a dye pack with money.  Phaknikone does not contest on appeal that this conduct established a modus operandi, and he does not contest that the jury was entitled to find that he committed each of the related robberies.  Viewed in its totality, the evidence of Phaknikone's guilt is overwhelming, and there is no reason to think

24

that the error of admitting the MySpace evidence had a substantial or injurious effect in influencing the jury.

*B. The District Court Did Not Abuse Its Discretion in Its Answer to the Question of the Jury.*

Phaknikone argues that the district court abused its discretion in its answer to the question of the jury in two ways. He argues that the district court abused its discretion by both answering the jury that Agent Rambaud's testimony was evidence and by failing to give a limiting instruction with its answer. We disagree.

The district court did not abuse its discretion by informing the jury that Agent Rambaud's testimony was evidence. Phaknikone argues that Agent Rambaud's testimony was summary testimony, Fed. R. Evid. 1006, but Agent Rambaud's testimony was not summary in nature. Summary testimony relates to "voluminous writings, recordings, or photographs which cannot conveniently be examined in court." Id. Agent Rambaud's testimony provided a first-hand account of Phaknikone's post-arrest statement.

Phaknikone next argues that the failure to provide a limiting instruction about witness credibility, "could not have done anything but lead the jury to give greater evidentiary weight and credibility to Agent Rambaud's testimony than they otherwise would have" given his testimony, but the failure to give a proposed instruction is not reversible error if "its subject matter was . . . substantially

25

covered by other instructions." United States v. Dean, 487 F.3d 840, 847 (11th Cir. 2007). The district court referred the jury to an instruction about witness credibility that had already been given. The district court did not abuse its discretion.

*C. Section 922(g)(1) Is a Valid Exercise of Congress's Commerce Power.*

Phaknikone argues that the statute that makes possession of a firearm by a convicted felon unlawful, 18 U.S.C. § 922(g)(1), violates the Commerce Clause of the Constitution, U.S. Const. Art. I, § 8, cl. 3, both on its face and as applied to him, because it regulates purely intrastate activity and does not require a substantial effect on interstate commerce. Phaknikone concedes, however, that this argument is foreclosed by our precedents. See, e.g., United States v. Dunn, 345 F.3d 1285, 1297 (11th Cir. 2003); Scott, 263 F.3d at 1274. Section 922(g)(1) is constitutional.

*D. The District Court Correctly Interpreted Section 924, and Phaknikone's Sentence Is Reasonable.*

Phaknikone's remaining arguments challenge the length of his sentence. He raises three objections. All fail.

Phaknikone argues, on the basis of prefatory language in the statute, see 18 U.S.C. § 924(c)(1)(A), that a sentence for multiple violations of section 924 is capped at 25 years of imprisonment. We rejected this argument in our recent

26

decision in United States v. Tate, 586 F.3d 936, 945–47 (11th Cir. 2009).  See also

United States v. Segarra, 582 F.3d 1269 (11th Cir. 2009).  Section 924 requires

consecutive sentences for Phaknikone's convictions under that statute.

Phaknikone also argues that, because each count under section 924 was

charged in a single indictment, the district court erroneously applied the higher

mandatory minimum of 25 years of imprisonment for "a second or subsequent

conviction," 18 U.S.C. § 924(c)(1)(C), to six of his seven convictions.  We long

ago rejected this argument, as Phaknikone concedes.  See United States v.

Rawlings, 821 F.2d 1543, 1545 (11th Cir. 1987); see also Deal v. United States,

508 U.S. 129, 113 S. Ct. 1993 (1993).  Section 924 requires a minimum sentence

of 25 years for all subsequent convictions under the statute.

Phaknikone finally argues that his sentence of 2,005 months of

imprisonment is substantively unreasonable and "greater than necessary," 18

U.S.C. § 3553(a), but we disagree.  Phaknikone has not proved that his sentence

for the underlying convictions is "unreasonable in the light of both [the] record and

the factors in section 3553(a)," Talley, 431 F.3d at 788, and statutory minimum

sentences, as provided in section 924, still must be applied even though the

Sentencing Guidelines are now only advisory, see United States v. Castaing-Sosa,

530 F.3d 1358, 1362 (11th Cir. 2008).  Phaknikone was a repeat offender recently

released from prison when he committed these seven armed bank robberies. Phaknikone has directed us to nothing in the record or the section 3553(a) factors that militates against a within-guidelines sentence.

## IV.  CONCLUSION

Phaknikone's convictions and sentence are **AFFIRMED**.