[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11331
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20461-RSR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN CAMERON CAIN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 10, 2015)

Before WILSON, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

John Cain appeals his convictions for (1) forcibly assaulting a federal officer while using a deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b); (2) brandishing a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

## I.

During the mid-afternoon hours on June 12, 2013, Cain was walking down a street in Homestead, Florida, carrying an assault rifle over his shoulder with a handgun tucked inside his waistband. A woman who happened to be driving down the same street that Cain was walking on, noticed Cain walking along the side of the road carrying an assault rifle on his shoulder. As her vehicle approached, Cain pulled the handgun from his waistband, pointed the gun at the woman, and asked, "What the fuck are you looking at, bitch?" Immediately thereafter, the woman reported what had occurred to the police, and the police began to marshal a perimeter.

Meanwhile, an employee of the United States Postal Service (USPS), while on his way back from delivering mail to his daily route, also saw Cain walking along the side of the road with an assault rifle draped over his shoulder. As the USPS employee attempted to make a turn, Cain approached his vehicle, pointed his handgun directly at him and asked, "What's up?!" In a state of panic, the

2

USPS employee sped off down the street and made the first turn he could to avoid any potential gunfire from Cain.  After making the turn, the postal employee encountered two police officers who appeared to be searching for a suspect.  The USPS employee immediately flagged the officers down, informed the officers of what had just occurred, and pointed the officers in the direction in which he last saw Cain.

Thereafter, the officers located a seemingly agitated, belligerent, and aggressive individual who was carrying an assault rifle and a handgun—whom they later learned to be Cain.  As the officers approached, Cain screamed profanities toward the officers and attempted to instigate a physical confrontation with them.  With their weapons drawn, the officers demanded that Cain immediately drop his weapons, after which Cain eventually complied.  The officers then moved in and placed Cain under arrest.

At trial, the above-mentioned facts were undisputed.  Cain raised the defense of insanity, which created only one issue: whether Cain, during the commission of the offense, had the requisite state of mind to be found guilty of the crimes of which he was charged.  To establish that he was insane at the time of the alleged offense, Cain sought to admit testimony from Dimitrios Kalogiannis—a clinical social worker who conducts mental health evaluations of inmates at the Broward County Jail—concerning statements Cain made to Kalogiannis during a mental

3

evaluation of Cain.  Specifically, Kalogiannis was to testify that during a mental evaluation at Broward County Jail, Cain told him that at the time the alleged offense occurred he was experiencing auditory hallucinations.  Upon the government's hearsay objections, the district court excluded Kalogiannis's testimony concerning these statements.  At the conclusion of a three-day trial, the jury returned a guilty verdict on all three counts charged in the indictment.  Cain received a total 300-month term of imprisonment.  This appeal followed.

On appeal, Cain argues that the district court improperly excluded the testimony of Kalogiannis because it was non-hearsay.   Cain asserts that the statements were being offered for impeachment purposes—not to prove the truth of the matter asserted.  Cain also argues that Kalogiannis's testimony was admissible as an exception to the rule against hearsay pursuant to Rule 803(4) of the Federal Rules of Evidence, which allows statements to physicians that are made in furtherance of medical diagnosis.  Finally, Cain argues that the district court's exclusion of this testimony substantially prejudiced him because Kalogiannis's testimony concerning statements that Cain made to him during his mental evaluation was critical to his defense of insanity, thereby preventing him from fully presenting his insanity defense at trial.

Because we conclude that the district court did not abuse its discretion when it excluded Kalogiannis's testimony, we affirm.

4

## II.

"We review a district court's decision to admit or exclude evidence for abuse of discretion." *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014). An evidentiary ruling that is erroneous will only result in reversal if the ruling was not harmless. See *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir.) *corrected,* 194 F.3d 1186 (11th Cir. 1999). An error is not harmless if "there is a reasonable likelihood that [the error] affected the defendant's substantial rights." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). We need not reverse a defendant's conviction "if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *Hands*, 184 F.3d at 1329 (internal quotation marks omitted). We will reverse a defendant's conviction if the error caused actual prejudice because of its "substantial and injurious effect or influence" on the jury's verdict. *United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010). Overwhelming evidence of guilt is a factor that may be considered in determining harmlessness. *Id*. The government bears the burden of establishing that an error is harmless. *Id*. We review the entire record to reach a decision on the reversibility of an evidentiary error. *Id.*

The Federal Rules of Evidence define hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

5

prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Hearsay is not admissible unless otherwise authorized by federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.  Fed. R. Evid. 802.  Out-of-court statements offered for a reason other than their truth are not hearsay, however, and their admission consequently is not barred by Rule 802 of the Federal Rules of Evidence.  *See United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006) (per curiam).

A statement made for impeachment purposes is typically not hearsay.  *See United States v. Grant*, 256 F.3d 1146, 1156 (11th Cir. 2001).

> [T]he point of admitting inconsistent statements to impeach is not to show that they are true, but to aid the jury in deciding whether the witness is credible; the usual argument of the party doing the impeaching is that the inconsistent statements show the witness is too unreliable to be believed on important matters.

*Id.*

Here, the statements made by Cain to Kalogiannis constituted hearsay, because the statements were made out of court during an interview at the Broward County Jail and were not offered for a valid non-truth purpose.[1]  *See* Fed. R. Evid.

---

[1] We note that the record reveals that at one point during the trial, Cain's defense counsel was asked by the district court to explain how Kalogiannis's testimony regarding statements Cain made to him during his mental evaluation at Broward County Jail would be non-hearsay and Cain's counsel's response was, "at the time [Cain] was seen by [Kalogiannis] here in that intake, [Kalogiannis] notes that Mr. Cain related to him that he was experiencing auditory hallucinations."  As we see it, this response indicates that the testimony would have been offered to prove that Cain reported experiencing auditory hallucinations—the truth of the matter it intends to assert.

801–802.  While Cain asserted that he intended to offer the statements made by Cain to Kalogiannis during his mental evaluation at Broward County Jail for impeachment purposes, the impeachment purposes proffered by Cain were not legitimate bases for impeachment.  Impeaching Dr. Luis with statements made by Cain to Kalogiannis is a type of impeachment that falls outside the traditional scope of impeachment recognized by this Court—to show that the witness himself made inconsistent statements that undermined his credibility.  *See Grant*, 256 F.3d at 1156.

Cain also argues that his statement to Kalogiannis during his mental evaluation at the Broward County Jail qualifies as admissible hearsay pursuant to the exception under Rule 803(4).  While we acknowledge that the commentary to Rule 803(4) provides that statements made to physicians in furtherance of medical diagnosis and for treatment purposes are not hearsay, the commentary does not make it clear whether or not statements to clinical social workers qualify under Rule 803(4)'s exception.[2]  *See* Advisory Committee's Note to Para. (4) of Fed. R. Evid. 803.  This Court has yet to define the scope of Rule 803(4), and the language of Rule 803(4) does not make it clear whether or not statements to clinical social

---

[2] As the parties noted, at least two circuits have resolved this issue in favor of allowing statements made to social workers for treatment purposes to count as an exception to the hearsay rule pursuant to Rule 803(4).  *See United States v. Kappell*, 418 F.3d 550, 557 (6th Cir. 2005); *Davignon v. Clemmey*, 322 F.3d 1, 8 n.3 (1st Cir. 2003).  However, we are not bound by these decisions here.

7

workers qualify for the exception.  Therefore, without controlling precedent in this circuit regarding the scope of Rule 803(4), we cannot conclude that the district court's exclusion of the statements here was an abuse of its discretion.

However, even if we were to conclude that the district court abused its discretion when it excluded Cain's statements to Kalogiannis as hearsay, the exclusion must have also prejudiced Cain.  *Phaknikone*, 605 F.3d at 1109.  We cannot conclude here that the exclusion of this testimony—given the number of witnesses permitted to testify about Cain's mental condition, and the scope of the cross-examination of Dr. Luis—had a "substantial and injurious effect or influence" on the jury's verdict.  *Id*.  Evidence of Cain's mental state was overwhelming.  For example, multiple witnesses for the prosecution and the defense, including Kalogiannis, Dr. Ouaou, Dr. Holmes, and Dr. Luis, testified about Cain's mental state, and thus provided the jury with comprehensive observations about Cain's mental state at the time of the offense.  In addition, Drs. Ouaou and Holmes both testified that in their opinion, Cain suffered from a mental disease or defect at the time of the offense and that their opinions were based on a review of his medical records, assessments, and their professional knowledge.  Moreover, Dr. Holmes testified that although Cain did not report auditory hallucinations during her interview with him, Cain was already taking medication for auditory hallucinations at the time of the interview—an indication that Cain

had reported experiencing auditory hallucinations prior to the interview.  This testimony provided the jury with a reasonable basis upon which to make their determination concerning whether or not Cain was insane at the time he committed the offense, regardless of the district court's evidentiary ruling that excluded Cain's hearsay statements to Kalogiannis. *See id.*

In light of the entire record, we conclude that the district court did not abuse its discretion by excluding Kalogiannis's hearsay testimony.  Thus, we affirm the district court's evidentiary rulings and Cain's conviction.

**AFFIRMED.**