[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11807

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EN CHIM,
a.k.a. Junior,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cr-00064-TFM-B-1

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

En Chim appeals his convictions for Hobbs Act robbery and brandishing a firearm during a crime of violence, and the substantive reasonableness of his sentence. He argues that a reasonable jury would not have believed the testimonial evidence presented at trial and that the district court abused its discretion by admitting evidence of an uncharged staged robbery. He also argues that the court abused its discretion at sentencing by declining to reduce his 283-month sentence to compensate for the severity of the mandatory consecutive sentences for brandishing a firearm. After careful review, we affirm.

## I.    BACKGROUND

We presume familiarity with the factual and procedural history and describe it below only as needed to resolve the issues raised in this appeal.

A federal grand jury indicted Chim for two robberies that occurred nine days apart in Bayou La Batre, Alabama—the first at a Value Express convenience store, and the second at a Subway restaurant. The indictment charged two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts One and Two); two counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three and Four); and one

count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five).

### A.    The Government's Case at Trial

At trial, the government called Naif al Samet. Al Samet testified that he was working behind the counter at Value Express when two robbers entered, pointed a gun at him, and stole around $300 from the cash register. The first robber had his face partially covered and the second wore a mask. A few days later, while al Samet was working at the store, a man with the same eye features, voice, pants, and mannerisms as the first robber visited the store. Al Samet then called the police, pointed the man out on the store's surveillance video, and identified him as one of the men who had robbed him days earlier. Police identified the man in the surveillance video as Chim.

The government then called Chasity Silloway. Silloway testified that, nine days after the Value express robbery, she was working at Subway when a hooded man wearing a bandana over his face entered and pulled out a gun. He made Silloway open the cash register, remove the drawer, and take the drawer to the back door where another robber was waiting to put the money in a bookbag. The robbers then located and took the box where Subway kept its petty cash, leaving with around $800. Silloway did not immediately reveal to police that she knew one of the robbers because she was "really shaken up." But she later told police that she recognized one of the robbers as Chim. She believed it was Chim because Chim

was the fiancé of the night shift manager, Britney Owens, and often came to the restaurant to see Owens. Silloway also testified that five minutes before the robbery, Owens had called her. She added that only employees who worked at the store knew where the petty cash box was hidden. Finally, she identified Chim in the courtroom.

The government then called Silloway's coworker at the time of the robbery, Chelsea Johnson. Johnson's description of events matched Silloway's—including that she too had received a call from Owens minutes before the robbery. She testified that the second robber was wearing a distinctive mask from the "Scream" movies, that the robbers wore matching gray shoes, and that the first robber was wearing a bandana that left his eyes uncovered. A few hours after the robbery, she sent police a picture of Chim and identified him as one of the robbers. She also identified Chim in the courtroom.

The government next called Kory McClantoc. McClantoc testified that on the night of the Subway robbery he noticed a car belonging to Chim's "wife[] . . . or girlfriend[]" driving slowly in front of him near Subway. McClantoc testified that he had not recognized the driver at the time. But after the government refreshed McClantoc's memory on the stand, McClantoc confirmed that he had first told police that on the night of the robbery he had seen Chim driving slowly down the road near Subway.

The government next called Jennifer Renee Lee, Subway's general manager. Lee was not at the store during the robbery. She

testified that knowledge of the petty cash lockbox's location was "insider information," that Owens knew its location, and that Owens and Chim were living together at the time of the robbery. She also testified that she received a call from an unknown number on the morning after the robbery, and that the caller told her "[y]ou got what you deserve, bitch." She recognized the caller's voice as Chim's.

Along with evidence of the charged Value Express and Subway robberies, the government offered extrinsic evidence of an uncharged theft from a Chevron station that occurred just before the second charged robbery in nearby Irvington, Alabama. The government argued that the evidence was probative because of the Chevron theft's similarity to the charged robberies. Just like those robberies, the Chevron theft involved: two robbers wearing grey shoes, blue gloves, and hooded sweatshirts; the first robber carrying a silver pistol, wearing black pants, and covering his face up to his eyes; and the second robber dressed in black, handling the money, and wearing a Scream mask. Moreover, the first Chevron robber appeared to be wearing the same hooded sweatshirt—a distinctive blue and white varsity-style jacket with light blue writing—that he wore during the Value Express robbery.

At trial, the district court admitted the extrinsic offense evidence over Chim's objection. It concluded that the evidence was relevant to Chim's "modus operandi, identity, lack of mistake or accident, part of [a] plan, scheme," and that it was not unduly prejudicial. The court gave a limiting instruction, explaining that the

jury could use evidence of the Chevron theft to help "decide whether the similarity between those acts and the ones charged in this case suggest that the same person committed all of them." And it clarified that Chim was "on trial only for the crimes charged in the superseding indictment."

The government's extrinsic offense witness was Victoria Lindsay. Lindsay testified that she worked at the Chevron station around the time of the robberies and had previously bought narcotics from Chim. She testified that she helped Chim rob the Chevron station in exchange for money. She also testified that she spoke with Chim on her cell phone right before the Chevron theft, communicating that the coast was clear. Video surveillance footage showed Lindsay letting two men—one of whom she identified as Chim—into the store. Chim was wearing a blue and white jacket. The other man was wearing a Scream mask. The man in the Scream mask emptied the cash register. Lindsay claimed to remember what Chim looked like, but when the government asked her to identify him in court, she identified a juror rather than Chim. She stated that she had not seen Chim in over two years.

The government also relied on testimony from Officer Michael Goodin, who investigated the Value Express and Subway robberies. He testified that he recognized the man that al Samet identified as one of the Value Express robbers as Chim. He also stated that during his investigation, Chim's brother contacted him about a cell phone he had found in Chim's old house. Officer Goodin retrieved the phone and gave it to FBI Special Agent Paul

Roche for examination. Special Agent Roche testified that the phone had been used to call Lindsay on the morning of the Chevron robbery and Lee on the morning after the Subway robbery.

After the government rested, Chim moved for a judgment of acquittal, arguing that the government had failed to produce sufficient evidence to sustain a conviction on any counts. The district court denied Chim's motion. Chim presented no evidence or witnesses and chose not to testify. He then renewed his motion for a judgment of acquittal, and the district court denied it for the same reasons it earlier stated. The jury found Chim guilty on all counts.

## B.    Sentencing

A probation officer prepared a presentence investigation report. The report calculated a total offense level of 23. It calculated a criminal history score of 13, establishing a criminal history category of VI. Based on a total offense level of 23 and a criminal history category of VI, the report calculated a guideline imprisonment range of 92 to 115 months for Counts One, Two, and Five. With two consecutive seven-year (84-month) mandatory minimum sentences for Counts Three and Four, the aggregate guidelines range was 260 to 283 months. Neither party objected to the report, which the district court adopted.

At his sentencing hearing, Chim argued that because his convictions for Counts Three and Four required a "very significant" sentence, that the court ought to impose a "minimal" sentence below the guidelines range for his other offenses to track the

purpose of 18 U.S.C. § 3553(a). The government requested a sentence at the high end of the guidelines range: 283 months. The government argued that Chim was a "menace" who would not hesitate to arm himself and confront members of his community. The district court agreed, sentencing Chim to 283 months' imprisonment followed by three years' supervised release. Neither party objected.

## II.    STANDARD OF REVIEW

We review sufficiency of the evidence *de novo,* viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences and credibility choices in favor of the verdict. *United States v. Demarest*, 570 F.3d 1232, 1239 (11th Cir. 2009).

We review evidentiary rulings for an abuse of discretion. *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005). We also review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III.    DISCUSSION

Chim raises three issues on appeal. First, he argues that the government's evidence was insufficient to identify him as one of the robbers, and thus cannot support his convictions on Counts One through Four. Chim does not challenge his conviction on Count Five. Second, he argues that the district court abused its discretion when it admitted evidence of the uncharged Chevron

robbery under Federal Rule of Evidence 404(b). Third, he argues that the district court abused its discretion by imposing an excessive sentence that was substantively unreasonable. We address each argument in turn.

## A.    *Sufficient Evidence Supported the Jury's Verdict*

First, Chim argues that there was insufficient evidence for a reasonable jury to convict him of the acts charged in Counts One through Four because the government failed to prove that he was one of the robbers. We disagree.

The relevant question in reviewing sufficiency of the evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Demarest*, 570 F.3d at 1239 (quotation marks omitted). In evaluating evidence, jurors may "apply their common knowledge, observations and experiences in the affairs of life." *United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir. 1985) (en banc). Credibility determinations are for the jury, and we will not disturb them unless the witness testimony is "incredible as a matter of law." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (quoting *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997)). Testimony is "incredible" as a matter of law if it "relates to 'facts the witness could not have possibly observed or events that could not have occurred under the laws of nature.'" *Id.*

Here, the government produced sufficient evidence to sustain Chim's convictions for Hobbs Act robbery and brandishing a

firearm. First, the eyewitness to the Value Express robbery—al Samet—later identified a man on the store's surveillance footage as one of the robbers, and Officer Goodin identified that man as Chim. Al Samet testified that he was sure that one of the robbers was Chim, as he could see Chim's features "right above his nose," and recognized Chim's eyes, voice, pants, and manners when he returned to the store days later. Second, two eyewitnesses to the Subway robbery—Silloway and Johnson—both identified Chim as one of the robbers. Silloway identified Chim based on his eyes, which were uncovered, and his voice. Johnson testified that she identified Chim based on his eyes, body type, and sweatshirt. Third, several witnesses who did not observe the robberies supplied testimony that supported the jury's verdict. McClantoc placed Chim near Subway shortly before it was robbed. And Lee testified that she recognized Chim's voice when he called her the morning after the Subway robbery and told her "[y]ou got what you deserve, bitch."

Because these witnesses' testimonies related to their own experience and observations, they were not incredible as a matter of law. *See Flores*, 572 F.3d at 1263. Furthermore, the eyewitnesses' failure to identify Chim to police right after the robberies does not preclude a reasonable juror from concluding that they accurately identified him later. A reasonable juror could have found that any delay in identifying Chim stemmed from shock or fright caused by being robbed at gunpoint. In sum, the evidence presented at trial

was sufficient for a rational trier of fact to conclude that Chim committed the charged offenses.

## B.    The District Court Did Not Abuse Its Discretion by Admitting Evidence About the Staged Chevron Robbery

Chim argues that the district court abused its discretion by admitting evidence of the uncharged Chevron robbery. He contends that the Chevron robbery lacked probative value because it was factually unlike the charged robberies. He also contends that the government failed to link him to the Chevron robbery because Lindsay, the extrinsic offense witness, misidentified Chim at trial and because there was no evidence that the cell phone linked to the Chevron theft was his. We disagree.

Federal Rule of Evidence 404(b)(1) bars the admission of evidence of prior crimes to prove that a defendant has a criminal disposition to create the inference that he committed the charged crimes. But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible, such evidence must satisfy three criteria: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the evidence must include sufficient proof that a jury could find that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by the danger of undue prejudice and should satisfy Federal Rule of Evidence 403. *See United States v.*

*Whatley*, 719 F.3d 1206, 1217 (11th Cir. 2013). In this context, "sufficient proof" requires merely a preponderance of the evidence. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000)).

Here, the district court ruled that the extrinsic offense evidence was admissible to show "modus operandi, identity, lack of mistake or accident, part of plan, [or] scheme." Though any one of the proposed grounds might justify admission, we focus on one: identity. When extrinsic offense evidence is introduced to prove identity, "the likeness of the offenses is the crucial consideration" and "must be such that it marks the offenses as the handiwork of the accused." *Id.* (quoting *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010) (internal quotation marks omitted)). "The extrinsic act must be a signature crime, and the defendant must have used a modus operandi that is uniquely his." *Id.* (internal quotation marks omitted). The two crimes must "bear such peculiar, unique, or bizarre similarities as to mark them as the handiwork of the same individual." *United States v. Myers*, 550 F.2d 1036, 1045–46 (5th Cir. 1977) (quoting *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974)).

Evidence of the Chevron robbery was relevant to prove Chim's identity because that theft was strikingly similar to the charged robberies. *See Whatley*, 719 F.3d at 1217. First, all robberies featured the presence of a money-handling accomplice wearing a distinctive Scream mask. Second, Chim allegedly wore the same gray shoes and black pants, and carried the same silver gun,

in all three robberies. And he appears to have worn the same blue and white varsity-style jacket during the Value Express robbery and the Chevron robbery. Finally, the Chevron robbery was committed close in time and geographic proximity to the charged robberies. These factual similarities overcome the differences between the crimes—namely, that the Chevron robbery occurred several miles from Bayou la Batre and was coordinated with a Chevron employee.

The government also supplied sufficient proof for the jury to find, by a preponderance of the evidence, that Chim committed the Chevron robbery, even without an in-court identification by Lindsay. *Id.* The jury heard Lindsay testify that she had purchased narcotics from Chim, that Chim organized the Chevron robbery and persuaded her to participate, and that Chim participated in the robbery. And it heard Lindsay testify that she had not seen Chim in over two years. The jury also heard evidence that a burner phone found in Chim's old house was used in relation to the Chevron and Subway robberies.

Finally, given the similarity of the Chevron robbery to the charged robberies, we cannot say the district court erred in concluding that the probative value of the extrinsic offense evidence outweighed the risk of undue prejudice, which the district court mitigated with its limiting instruction. *Id.*

When, as here, we review for abuse of discretion, it "means that the district court had a 'range of choice' and that we cannot reverse just because we might have come to a different conclusion

had it been our call to make." *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (quoting *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007)) (quotation marks omitted). *See also Rasbury v. I.R.S.* (*In re Rasbury*), 24 F.3d 159, 168 (11th Cir. 1994) ("By definition, however, under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call."). Though we might have come to a different conclusion had we weighed the evidence ourselves, we cannot say that the district court abused its discretion in admitting evidence of the Chevron robbery. *Henderson*, 409 F.3d at 1297.

## C.    *Chim's Within-the-Guidelines Sentence Was Reasonable*

Chim argues that the district court abused its discretion by imposing an "excessive sentence" that was greater than necessary to accomplish the sentencing objectives in 18 U.S.C. § 3553(a). Again, we disagree.

A sentence is substantively unreasonable if the district court: "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). We will vacate a sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [Section] 3553(a) factors by arriving at a

sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotation marks omitted). We ordinarily expect a sentence within the guideline range to be reasonable. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

We cannot say the district court erred in declining to reduce Chim's sentence for Counts One, Two, and Five to offset his two mandatory consecutive sentences for brandishing a firearm. The district court did not deny that it had the authority to reduce Chim's overall sentence to account for his mandatory minimums. *See Dean v. United States*, 137 S. Ct. 1170 (2017). But it gave good reasons for declining to do so—namely, the violent nature of Chim's robberies, which "thank God . . . didn't result in anyone's death," and which the district court initially thought justified an above-guidelines sentence of 360 months. *See* 18 U.S.C. § 3553(a). Ultimately, however, the district court imposed a sentence within the guideline range, which we ordinarily expect to be reasonable. *See Gonzalez*, 550 F.3d at 1324. And Chim gives no reason for us to conclude with a "definite and firm conviction" that his sentence is outside the range of reasonable sentences dictated by the facts of the case. *Irey*, 612 F.3d at 1190. Accordingly, the district court did not abuse its discretion in imposing Chim's sentence.

## IV.    CONCLUSION

For the foregoing reasons, the district court is **AFFIRMED**.