[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-12322
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2011
JOHN LEY
CLERK

D. C. Docket No. 6:09-cr-00223-GAP-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH EMANUEL

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

(April 4, 2011)

Before TJOFLAT, HULL and MARTIN, Circuit Judges.

PER CURIAM:

In October 2009, a Middle District of Florida grand jury returned a six-

count indictment charging Joseph Emanuel, the appellant, and five other individuals as follows. Counts One and Two charged Emanuel Knud Davis, and James Griffin with carjacking a 1994 Chevrolet Caprice on May 30, 2009, in violation of 18 U.S.C. §§ 2119(1) and (2), and with using a firearm in connection with that crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924 (c)(3) and 2. Counts Three and Four charged Emanuel, Eric Jackson, and Stephenson Peltier with robbing a branch of the Washington Mutual Bank on June 6, 2009, in violation of 18 U.S.C. §§ 2113(a) and 2, and with using a firearm in connection with that crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924 (c)(3) and 2. Counts Five and Six charged Emanuel, Jackson, and Adrian Ware with robbing a branch of Sun Trust Bank on June 13, 2009, in violation of 18 U.S.C. §§ 2113(a) and 2, and with using a firearm in connection with that crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924 (c)(3) and 2. Each of Emanuel's codefendants pled guilty to one or more of the offenses with which he was charged; Emanuel thereafter stood trial before a jury.

Relying on the testimony of Emanuel's accomplices and other witnesses, along with the physical evidence the Government presented, the jury found Emanuel guilty as charged. The district court sentenced Emanuel to concurrent prison terms of 60 months on Counts One, Three, and Five, a consecutive prison

term of 84 months on Count Two, a consecutive term of 300 months on Count Four, and a consecutive term of 300 months on Count Six—for a total term of imprisonment of 740 months.[1]  Emanuel now appeals his convictions and sentences.

## I.

Emanuel does not challenge the sufficiency of the evidence to convict him of the six offenses.  Instead, he argues that two evidentiary rulings the district court committed at trial deprived him of a fair trial and therefore require the vacation of his convictions and a new trial.

## A.

Emanuel argues that the district court infringed his Sixth Amendment right of confrontation in restricting his cross-examination of Eric Jackson.  Before Jackson was called to the witness stand during the Government's case in chief, defense counsel explained (in the absence of the jury) that Jackson had been previously evaluated by a psychiatrist appointed by the Florida circuit court (in a case brought against Jackson) and that his report suggested that Jackson was incompetent to stand trial and was suffering from several mental health conditions. Before the court could resolve the competency issue, Jackson was brought before

---

[1]  The court also ordered Emanuel to pay restitution to the two banks that were robbed.

3

the district court—to answer the charges of the instant indictment—and was evaluated by a court-appointed psychiatrist, whose report suggested that Jackson was malingering or faking his symptoms. Defense counsel indicated he wished to cross-examine Jackson along the following lines, "You're a manipulator. You're trying to manipulate the system for your own benefit, or are these actual mental health issues that you are suffering at this point?" The prosecutor responded that the magistrate judge who accepted Jackson's guilty plea had found Jackson competent, and that it was not proper impeachment to ask Jackson about someone else's opinion of him.

The district court noted that both of the psychiatrists' reports were hearsay and could not be used for impeachment at that point in time, as neither psychiatrist had testified. Defense counsel stated he wanted to ask Jackson, "Isn't it true that you said you hear voices? Isn't it true that you claim to have mental health issues? Isn't it true that you've said that you suffer from delusional thoughts?" The court reserved its ruling on the proposed line of cross-examination.

With the jury back in the jury box, the Government began its questioning of Jackson. Jackson testified as follows: Emanuel told him he needed cars, like "Chevys or Buicks or Oldsmobiles, any General Motor," to commit bank robberies. Emanuel described robbing banks as "sweet," indicating that he had

4

previously robbed banks. Jackson agreed to help Emanuel and stole a Chevy truck and Chevy Caprice, relating the details of the thefts and where they occurred. Emanuel asked Jackson to rob the Washington Mutual bank, and Jackson agreed. The gun Emanuel used in the robbery, a silver and black handgun, was the same gun he had previously seen in Emanuel's possession. Jackson had also seen Emanuel with an assault machine gun, like the one used in the robbery. Jackson echoed much of Stephenson Peltier's testimony regarding the details of the bank robbery, and explained that he was responsible for obtaining the money from the teller. Emanuel remained in the stolen Chevy truck outside the bank, which they used as a getaway car.

Jackson recounted in detail the second bank robbery—the SunTrust Bank robbery that occurred on June 13, 2009. He described the types of firearms used and the getaway car they utilized. His accounts of the event were corroborated by the testimonies of Adrian Ware and other eye witnesses.

Prior to cross-examining Jackson and in the absence of the jury, defense counsel resumed his argument about the admissibility of the report the psychiatrist had submitted to the Florida circuit court. Defense counsel wanted to establish that Jackson had lied to the psychiatrist and to pose the question for the jury, "If he was lying then? Was he lying today?" The court ruled as follows:

So I would limit your questions to: In connection with your plea . . . was an evaluation performed by [the psychiatrist appointed in this case]? Did you undergo an evaluation? Did you answer questions? Is it not true that, and then start your cross and see what happens, but I don't want anything to do with that state proceeding.

The court also ruled that defense counsel could not inquire as to whether the psychiatrist the court had appointed had rendered an opinion that Jackson was malingering. Counsel could ask Jackson whether he answered the psychiatrist's questions truthfully, but not whether the psychiatrist disagreed with him. Finally, the court stated that it would reconsider its ruling if defense counsel called the psychiatrist to testify.

In the presence of the jury, Jackson said the following on cross-examination. He had pled guilty under a plea agreement to two counts of bank robbery and two counts of using a firearm in committing those offenses and would be sentenced to an extensive prison term. Under the plea agreement, though, he could receive a sentence reduction. He had received two psychological examinations, one ordered by the Florida circuit court the other by the district court, to determine his competency to stand trial. During the latter examination, the psychiatrist told him to be honest. He told the psychiatrist that he was "okay with [his] mind" and knew "what's going on." He did tell the psychiatrist, however, that in December 2007, he was hospitalized for suicidal attempts,

6

including taking "a number of sleeping pills, a Sprite with Nyquil, Xanax, Oxis, OxyContin, X pills." When defense counsel asked Jackson whether he was aware of what was going on that "today," he said "yes." Nothing was interfering with his ability to be rational and free thinking.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Implicit in that right is the right to effective cross-examination. *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). While defendants have the right to cross-examine witnesses effectively, *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), they do not have the right to cross-examine witnesses "in whatever way, and to whatever extent, the defense might wish," *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (internal quotation marks omitted). The Constitution is offended only when the defendant is denied the opportunity effectively to attack the credibility of the prosecution's witnesses. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1371 (11th Cir. 1994).

We review the district court's limitation of Jackson's cross-examination for abuse of discretion. *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir.

7

2009).  We will find an abuse only if "a reasonable jury would have received a significantly different impression of the [Jackson's] credibility had counsel pursued the proposed line of cross-examination." *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994).

The district court did not abuse its discretion in limiting Jackson's cross-examination since it gave counsel ample opportunity to attack Jackson's credibility in front of the jury. *Baptista-Rodriguez*, 17 F.3d at 1371.  The court restricted the cross-examination only to the extent that counsel could not inquire about the mental health evaluation made for the Florida circuit court because it did not pertain to the issue of Jackson's truthfulness.  Defense counsel was permitted to, and did, ask Jackson about his mental health, previous hospitalizations as a result of suicide attempts, and having a psychological evaluation conducted by a psychiatrist appointed by the district court.  When Jackson responded in the negative as to whether he had a mental health history, defense counsel asked him about multiple suicide attempts, including slitting his wrists, shooting himself, and pill overdoses, as well as his extensive drug use.

In addition to this, defense counsel elicited testimony detailing Jackson's criminal history, the plea agreement Jackson had negotiated with the Government, and the potential for a reduced sentence in exchange for his testimony.  Defense

counsel was able to cast doubt on Jackson's credibility without having to utilize the mental heath report the Florida circuit court had received from its appointed psychiatrist. Counsel could have questioned Jackson about hearing voices in his head or being a disciple of God without specifically asking whether he gave that information to that psychiatrist. In sum, we find no abuse of discretion in the district court's limitation of Jackson's cross-examination.

B.

While Peltier was on the witness stand during the Government's case in chief, the prosecutor, anticipating an objection, requested a bench conference to address the next line of questioning, as it potentially implicated Federal Rule of Evidence 404(b). The prosecutor proffered that Peltier would testify that he was in Emanuel's car when they spotted a person named Ganzie, and that Emanuel jumped out of the vehicle, brandished a silver automatic gun, stating that he would shoot Ganzie and called him "Pussy boy." The prosecutor argued that this testimony was pertinent because it was the same phrase Emanuel used to threaten a different codefendant when they first came to court. The prosecutor also contended that this testimony was admissible because it demonstrated Emanuel's knowledge that the gun was real, and not fake, and was the same gun used in the two bank robberies. Defense counsel objected as to the timing under Rule 404(b)

because it did not comport with the scheduling order, it was not relevant, and delving into the "Pussy boy" area was premature as it should be elicited from a different witness. The court agreed that the "Pussy boy" area was premature. However, the court stated that, "establishing evidence that he has used a gun that appears to be the same gun and has used it in the past in a threatening way, I think it's admissible. So if you have an objection to it, it's noted on the record."

Peltier then testified that Emanuel kept a nine-millimeter firearm under the front seat of his car, and recounted a prior altercation with a man named Ganzie. When Emanuel saw Ganzie while they were driving near Pine Hills on London Dairy Road, he flew into a rage and said " you should just shoot him right now." Emanuel pulled the vehicle over, jumped out, and "pulled out the nine from the front seat, underneath the driver's seat, and approached Ganzie and started cussing and fussing with him with the firearm in his hand." Emanuel kept calling Ganzie a "pussy" and they continued "fussing back and forth." The situation was resolved when another individual intervened.

On appeal, Emanuel argues that the incident between himself and Ganzie, as described by Peltier, did not satisfy the standards of intrinsic evidence of the charged crime because it did not relate to carjacking or bank robbery, and was not necessary to complete the Government's proof of the crimes charged. He also

10

argues that his threat against Ganzie did nothing to explain the context, motive, or setup of the charged crimes, and thus, was extrinsic under Rule 404(b). He contends that the district court's admission of evidence of the Ganzie incident failed to satisfy the first factor as set forth by this court in *United States v. Phaknikone*,[2] as it had no relevance to any of the issues at trial. The Government's theory of relevance, he continues, proved neither that he actually possessed, used, or carried a real gun, nor that the gun from the Ganzie incident was the same gun used in the bank robberies, as the real guns were never recovered. Rather, all that the Ganzie incident established was that he, Emanuel, was a person of bad character.

We review a district court's decision to admit evidence pursuant to Rule 404(b) for abuse of discretion. *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009). Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general

---

[2] *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir.), *cert. denied*, 131 S.Ct. 643 (2010).

11

nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

A three-part test is employed to determine whether a district court abused its discretion by admitting evidence of an extrinsic act under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) as part of the relevance analysis, there must be specific proof so that a jury could find that the defendant committed the extrinsic act; and, (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403. *Phaknikone*, 605 F.3d at 1107. This test applies whenever the extrinsic act actively reflects adversely on the character of the defendant, regardless of whether that activity might give rise to criminal liability. *Id.* The application of this test to evidence introduced under Rule 404(b) "var[ies] depending on the issue for which it was offered." *United States v. Lail*, 846 F.2d 1299, 1301 (11th Cir. 1988). Rule 404(b) "is a rule of inclusion . . . [and] 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (internal quotation marks omitted).

The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All relevant evidence is admissible. Fed. R. Evid. 402. However, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Because it gives the district court discretion to exclude otherwise admissible evidence, Rule 403 is applied sparingly. *United States v. Cole*, 755 F.2d 748, 766 (11th Cir. 1985). Thus, the balance under Rule 403 weighs in favor of admissibility. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990).

We have generally held that if the extrinsic act requires the same intent as the charged offense and if the act is proximate in time to the charged offense, then the extrinsic act is highly probative. *Baker*, 432 F.3d at 1205 (quoting *United States v. Church*, 955 F.2d 688, 702 (11th Cir. 1992)). Further, "[a] similarity between the other act and the charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005); *see also United States v.*

13

*Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991) (stating that the possession of a concealed firearm in a prior instance is relevant to the charge of possession of a firearm during the commission of a drug offense). The stronger the government's case regarding intent or knowledge, the less probative extrinsic evidence concerning intent or knowledge is. *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005).

The district court did not abuse its discretion when, over Emanuel's objection, it admitted Peltier's testimony regarding the Ganzie incident, during which Emanuel brandished a similar, if not the same, firearm utilized in the bank robberies. *See Ramirez*, 426 F.3d at 1354. Emanuel focused much of his defense and cross-examination of witnesses on whether the handgun used was an actual firearm, or, a fake or replica firearm, and objected to the relevance of the incident. Peltier's testimony describing Emanuel brandishing a firearm and confronting an individual after stating "just shoot him right now" was relevant as it established a similarity between the other act and the charged offense as to the type of gun that was used. *Ramirez*, 426 F.3d at 1354; (R9 at 46). It also was relevant as to whether the gun was actually real or not, as well as to Emanuel's knowledge that the gun was real, in contradiction of his defense. Thus, the first prong of the three-part test set forth in *Phaknikone* is satisfied. 605 F.3d at 1107.

14

The second prong is also satisfied, as Peltier's eye-witness testimony was sufficient proof so that the jury could reasonably find that Emanuel committed the extrinsic act. *Phaknikone*, 605 F.3d at 1107. Peltier described in detail the incident that transpired between Emanuel and Ganzie, including that the encounter occurred "in Pine Hills on London Dairy Road" and Emanuel "pulled out the nine from the front seat, underneath the driver's seat" and then approached Ganzie.

Lastly, the probative value of the evidence was not substantially outweighed by its undue prejudice, particularly because the firearms used in both bank robberies were never recovered, and this evidence showed that Emanuel did own and utilize a real firearm that matched the description from the robberies. Additionally, the incident described reflected upon Emanuel's knowledge, possession, and use of a real firearm to confront an adversary.

## II.

Addressing his sentences, Emanuel argues that the district court erred in imposing consecutive sentences for his convictions on Counts Two, Four, and Six alleging violations of 18 U.S.C. § 924(c). He concedes, however, that his argument is foreclosed by our precedent, *United States v. Tate*, 586 F.3d 936 (11th Cir. 2009). He also argues that § 924(c) is unconstitutional under the Commerce Clause. He concedes that this argument is also foreclosed by our precedent,

*United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010).  Thus, Emanuel's sentences

on the above three counts remain undisturbed.

AFFIRMED.